**In the INTEREST OF C.W., Minor Child, A.W., Mother, Appellant.**

No. 96–0041.

Court of Appeals of Iowa.

June 27, 1996.

Bruce J. Toenjes of Nelson & Toenjes, Shell Rock, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller–Todd, Assistant Attorney General, and Martin M. Peterson, Assistant County Attorney, for appellee State.

Patrick G. Vickers of the Vickers Law Office, Greene, guardian ad litem for minor child.

Heard by SACKETT, C.J., and HUITINK and VOGEL, JJ.

SACKETT, Chief Justice.

Appellant Ann, the mother of Christopher, born on August 10, 1994, appeals the juvenile court's termination of her parental rights to her son. Ann contends: (1) the juvenile court wrongly denied her motion for continuance; and (2) her parental rights should not have been terminated. Christopher's father is not a party to this appeal, and his parental rights have not been terminated. We affirm.

Ann is 24 years old. She abused controlled substances while pregnant with Christopher. During her pregnancy, a court order committed her to a substance abuse facility. Immediately following Christopher's birth, hospital officials concluded she lacked the skills required to care for an infant. Consequently, Christopher was removed from Ann's custody on August 12, 1994, and the State found Christopher to be a child in need of assistance on September 20, 1994. The State later filed a petition to terminate Ann's parental rights. The juvenile court granted the petition and this appeal follows.

■ **I. *Motion for Continuance.*** We review a motion for continuance under an abuse of discretion standard and will only reverse if injustice will result to the party desiring the continuance. *In re Estate of Lovell,* 344 N.W.2d 576, 578 (Iowa App.1983). Denial of a motion to continue must be unreasonable under the circumstances before we will reverse. *Michael v. Harrison County Rural Elec. Coop.,* 292 N.W.2d 417, 419 (Iowa 1980) (citing *State v. Cott,* 283 N.W.2d 324, 329 (Iowa 1979)).

■ Ann advocates the motion should not have been denied because she could learn to care for Christopher. Ann claims she deserves the opportunity to show how Alcoholics Anonymous and individual therapy have helped her become a better parent.

The State argues Ann had fifteen months to demonstrate her parenting skills; Christopher was born on August 10, 1994, and was immediately placed in foster care, yet the motion for continuance was not filed until November 16, 1995. A sense of urgency exists in termination cases due to the importance of stability in a child's life. *In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990). Due to this urgency, the trial court is not obligated to grant a parent's motion for continuance because "children simply cannot wait for responsible parenting." *Id.*

Although Ann has learned some parenting skills and has slightly improved the cleanliness of her apartment when linked to money rewards, the record supports a finding she cannot adequately care for Christopher. Ann underwent a psychological evaluation on May 20, 1995. The psychologist concluded Ann "lacks the mental ability, emotional stability and self-confidence to adequately care for [Christopher]." For example, during Ann's supervised visits with Christopher, the service worker had to constantly remind her to feed, change, and bathe Christopher.

Ann's appellate counsel also represented her before the termination, lessening the need for a continuance. Thus, we agree with the State that the juvenile court did not abuse its discretion in refusing to grant the motion to continue.

■ **II. *Termination of Parental Rights.*** We review the termination de novo. *In re W.G.,* 349 N.W.2d 487, 491 (Iowa 1984), *cert. denied sub nom. J.G. v. Tauke,* 469 U.S. 1222, 105 S.Ct. 1212, 84 L.Ed.2d 353 (1985); *In re the Miller Children,* 228 N.W.2d 60 (Iowa 1975). However, we give weight to the juvenile court's findings of fact, especially the credibility of the witnesses. *W.G.,* 349 N.W.2d at 491–92; *L.L.,* 459 N.W.2d at 493.

Ann contends the State failed to prove by clear and convincing evidence the fourth element of Iowa Code section 232.116(1)(g) (1995) which allows termination only if the child cannot be returned to the parents' custody at the present time. Ann concedes the first three requirements of section 232.116(1)(g) have been proven by clear and convincing evidence. Thus, Ann agrees Christopher is three years old or younger; has been found to be a child in need of assistance; and has been removed from his parents' custody for more than six months of the past twelve months, or for the last six

consecutive months and any home trial period has not exceeded thirty days.

■ Ann claims under section 232.116(1)(g)(4) both parents' rights must be terminated because this section utilizes the plural of "parent". Ann suggests section 232.116 purposely differentiates between the singular and the plural of "parent(s)."

The Iowa Supreme Court has interpreted the language of Iowa Code section 232.116 to allow the termination of one parent's rights. *In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992). Although *N.M.* concerned the language of section 232.116(1)(d), the court (in a footnote) interpreted sections 232.116(1)(e) and (g) like section (d). *Id.* Consequently, the rights of one noncustodial parent may be terminated. *Id.* The court interpreted the statute this way to best serve the child's interests. *Id.* Additionally, Iowa Code section 4.1(17) (1995) (statutory interpretation) states, "the singular includes the plural, and the plural includes the singular . . . ." *Id.* Therefore, section 4.1(17) permits the termination of one parent's rights.

■ In addition to meeting the statutory requirements for termination set forth in section 232.116(1)(g), the termination must be in the best interest of the child. *In re T.Q.*, 519 N.W.2d 105 (Iowa App.1994)(citing *In re B.G.C.*, 496 N.W.2d 239, 245 (Iowa 1992) and *In re D.W.K.*, 365 N.W.2d 32, 34–35 (Iowa 1985)). Thus, termination is not mandatory upon finding the requisite elements in section 232.116(1)(g). *In re E.B.L.*, 501 N.W.2d 547, 552 (Iowa 1993).

■ Ann also claims a constitutional right in the custody of her child. *In re T.R.*, 483 N.W.2d 334, 337 (Iowa App.1992). But, the right to care and custody of one's child serves as a rebuttable presumption and is not absolute. *In re T.D.C.*, 336 N.W.2d 738, 740 (Iowa 1983)(interpreting Iowa Code § 232.1 (1981)); *Long v. Long*, 255 N.W.2d 140, 143 (Iowa 1977).

■ The State has a duty to assure children within its borders receive adequate care and treatment. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). Thus, the State must intervene when parents do not

fulfill their responsibilities. *Id.* "The court has often recognized that there exists a parental interest in the integrity of the family unit; nonetheless we also are cognizant that this interest may be forfeited by certain parental conduct." *Id.* (citing *In re Wall*, 295 N.W.2d 455, 457 (Iowa 1980)). In particular, the State may interfere to prevent possible harm rather than intervene as a remedial measure. *Dameron*, 306 N.W.2d at 745. Under Iowa Code section 232.116(2) (1995), we consider the physical, mental, and emotional condition and needs of the child when deciding whether to terminate parental rights.

■ Clearly, at the time of the termination hearing Christopher could not return to Ann's custody without harm; his physical, mental, and emotional condition would be severely jeopardized. During supervised visits, Ann verbally abused Christopher by making comments such as, "How would (you) like not to have those teeth," "You're too young now to be hit but wait until you're 10," "Shut up," and that she would "blister his butt."

Ann also failed to supply Christopher's basic needs. For instance, on every visit the caseworker had to remind Ann to feed Christopher and change his diaper. At times, Ann refused to feed Christopher because "her stomach couldn't handle it." Ann spit on the apartment floor, mucous stuck to the walls, her bedroom smelled of urine, and used feminine hygiene products remained on the floor of her apartment. Such living conditions are unsuitable for a young child.

Ann admitted to the caseworker that she still abuses alcohol and controlled substances. Ann once blamed her erratic behavior on a cocaine withdrawal. Her verbal abuse of the caseworker often caused the visitation periods to run short. Ann did not maintain consistent visits with Christopher when she would not answer the door and when she left Iowa during the summer of 1995 to work in a carnival.

In March 1995, Ann participated in a psychological evaluation. The psychologist maintained Ann often substitutes fantasy for reality in stressful situations and possesses

extreme and unrealistic expectations of Christopher. The psychologist concluded Ann lacks the ability to care for Christopher. Ann's diagnosis was "Borderline Intellectual Function with elements of Schizoid Personality Disorder and Dependent Personality Disorder."

The Iowa Department of Human Services and Alternative Services assisted Ann in many areas, including parental skill training, housecleaning, and financial management. Michael Gordon of the Department of Human Services testified Ann received about two times as many services as any other recipient, yet has only made slight improvements in the sanitariness of her apartment when rewarded with money. It is disappointing when, despite large expenditures of money for services, the department is unable to successfully reunite a family.

We agree with the State there is clear and convincing evidence Christopher cannot be returned to Ann's custody at the present time because she is unable to provide a safe environment. Therefore, the requirements of Iowa Code section 232.116(1)(g) have been fulfilled, allowing the State to terminate Ann's parental rights. Nonetheless, we must find termination serves Christopher's best interest.

We consider both the long-term and immediate interests of the child when terminating parental rights. *Dameron,* 306 N.W.2d at 745. Evidence from a parent's past performance may be used to gauge the quality of life the child may receive in the future. *Id.*

Here, when we use Ann's past performance to gauge Christopher's future, we only envision a poor quality of life should her parental rights remain intact. The psychologist concluded Ann lacks the ability to raise Christopher. There is clear and convincing evidence supporting termination.

**AFFIRMED.**