**IN THE COURT OF APPEALS OF IOWA**

No. 14-1313
Filed January 14, 2015

**IN THE INTEREST OF J.J., J.J., and A.J.,**
      **Minor Children,**

**J.J., Father,**
      Appellant,

**S.C., Mother,**
      Appellant.
_____

        Appeal from the Iowa District Court for Muscatine County, Gary Strausser,

District Associate Judge.


        A mother and father appeal from an order terminating their parental rights.

**AFFIRMED ON BOTH APPEALS.**


        Mark J. Neary, Muscatine, for appellant-father.

        Douglas E. Johnston, Muscatine, for appellant-mother

        Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, Alan Ostergren, County Attorney, and Oubonh P. White,

Assistant County Attorney, for appellee.

        Joan Black, Iowa City, attorney and guardian ad litem for minor children.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MULLINS, J.**

The mother and father appeal from termination of their parental rights to three children, J.J. Jr., J.J., and A.J.  The parents challenge the sufficiency of the evidence supporting termination and the juvenile court's refusal to order a guardianship for the children.  We affirm.

The children came to the attention of the Department of Human Services (DHS) through three founded child abuse reports against the mother in August, September, and October 2010.  These reports found the mother failed to provide proper supervision for the children, who were aged three, two, and six months at the time.  The children remained with the mother, and DHS initiated services.  The court removed the children from the mother in March 2011, when a DHS worker visited the home and found the mother was asleep, not supervising the three children.  The court transferred custody to the father and found all three children in need of assistance pursuant to Iowa Code section 232.2(6)(c)(2) (2011).  The court ordered the father to participate in substance abuse evaluation and treatment and submit to drug testing; the court ordered the mother to get mental health treatment and drug testing.  Throughout the life of this case, the parents' compliance with these orders and participation in services has been minimal.

In December 2011, the father tested positive for methamphetamine and marijuana, as did one of the children; the court removed the children from the father and placed them with the paternal aunt.  The father tested positive for methamphetamine again in April 2012 and once more in May 2013.  In August

2012, the paternal aunt was diagnosed with cancer and was no longer able to care for the children. The court returned the children to the father. In December, the children were found walking alone near a busy highway. DHS believed the children were not living with the father, but that he had left them with the mother. The mother was later charged with and convicted of child endangerment.

In March 2013, the father was arrested and charged with D-felony child endangerment for slapping J.J. Jr. in the face, leaving a visible mark. Later, in a telephone conversation from jail, the father rebuked J.J. Jr. for talking to law enforcement officers about the injury. The court removed the children from the father for the last time and placed them with the paternal grandfather. In August 2013, DHS discovered the grandfather had left the children with the mother for a period of five days, violating the court's order and DHS directions. The court removed the children from the grandfather and placed them in family foster care where there have remained. In February 2014, the court determined the permanency goal of the case would be changed to termination of parental rights. Over the life of the case, the children had ten different placements. In April 2014, the father was sentenced for third-degree theft, D-felony child endangerment, and D-felony failure to appear. The total prison time of twelve consecutive years was suspended pending the father's placement in a residential correction facility. The father was at this facility at the time of the termination hearing with an expected discharge date of August 2014.

At the time of the termination hearing, the DHS workers gave the following report and testimony: There were five founded child abuse reports against the

mother. The mother had attended 37% of the visitations offered within the preceding year, and 50% of the one-on-one parenting classes offered. There were two founded child abuse reports against the father. He had attended 6% of the visitations offered within the preceding year; during most of that time, he was out of contact with DHS or in jail. The father had not seen the children in the preceding eleven months. Over the life of the case, there was very minor improvement, if any, in the mother's ability to supervise the children appropriately. The DHS worker reported

> [The mother] continued to participate "off and on" with both visits and parenting skill development. She continued to require very specific instruction mostly as it pertained to her supervision of the children. She continued to lack the desire and/or ability to gauge her children's supervisory needs in her home as evidence by [the service provider's] continued need to intervene and instruct as well as provision of hands-on instruction.

The parents did not believe there was anything wrong with their parenting. The parents had never been able to maintain a stable home environment. They had numerous addresses and phone numbers throughout the case. Summing up the preceding three years of DHS involvement, the worker reported

> This case was plagued by the chronic problems of 1) poor communication with the parents 2) poor participation in services 3) chronic cancellations and/or no-shows for visits and/or service provision as well as 4) ongoing reports of child protection concerns including substance abuse by one or both parents.

The State filed a petition for termination of parental rights, and the petition proceeded to hearings on May 7 and 8, 2014. At the time of termination hearing, the mother and father were requesting a guardianship be created for the children with the paternal aunt. The father moved for a continuance at the termination

hearing in order to complete a home study of a paternal aunt and uncle as prospective guardians. The juvenile court denied this motion and found that the requested guardianship would not provide the stability the children needed. The court terminated both the mother's and the father's parental rights to all three children pursuant to Iowa Code section 232.116(1)(f) and to J.J. Jr. alone pursuant to section 232.116(1)(i).

We review termination of parental rights proceedings de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). We give weight to the factual determinations of the juvenile court especially with regard to witness credibility, but are not bound by them. *Id.* Our primary consideration is the best interest of the child. *Id.* at 776.

The mother's appeal challenges termination under section 232.116(1)(h) and seems to make an argument under section 232.116(1)(e). Her rights were not terminated under either of those sections. She made no arguments and cited no authorities challenging the code sections under which her rights were terminated. Accordingly, she has waived all issues on appeal.[1] We address only the father's arguments.

The father appeals the sufficiency of the evidence to terminate and the court's decision to deny a guardianship. We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

---

[1] The mother's argument also seems to advocate reversal as to the father's parental rights. It is well-established that one parent does not have standing to advocate for the other's parental rights. *See In re K.R.*, 737 N.W.2d 321, 323 (Iowa Ct. App. 2007).

Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm. *In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). Here, we focus on the evidence related to the court's termination of the parents' rights under Iowa Code section 232.116(1)(f).

To terminate parental rights under section 232.116(1)(f), the State must prove

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance.
> (3) The child has been removed from the physical custody of the parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the parent.

The children were four, six, and seven years old at the time of the termination hearing. The juvenile court adjudicated them children need of assistance in its order of May 2011.[2] The children had been out of the father's care since the final removal in April 2013, thus, over twelve consecutive months with no trial periods

---

[2] At one point in the order, the court stated J.J. Jr. and J.J. were adjudicated in need of assistance. The father contends this indicates A.J. was never adjudicated in need of assistance, and consequently the State cannot prove termination is appropriate as to A.J. under Iowa Code section 232.116(1)(f)(2). However, at all other points in the adjudicatory order, the court refers to "the above-named children" or "all three children." We regard the omission of A.J. in the short list as an inadvertent omission cured, if necessary, by A.J.'s inclusion on every other occasion. Furthermore, at no time during the pendency of the CINA proceedings did the father raise a challenge to orders which included A.J., and he has not shown that he was prejudiced by the apparent scrivener's error.

to home.[3]  The father has not demonstrated an ability to resume custody of the children.  The father has two founded child abuse reports against him; he was convicted of felony child endangerment while the family was under DHS supervision; he has failed to comply with court orders for drug testing; he has tested positive for methamphetamine three times during this case; and he has failed to participate in ordered substance abuse treatment.  The father is currently in a residential correctional facility.  At the time of the termination hearing, he was not capable of caring for the children.  After three years of being in foster care limbo and having been moved to at least five different placements, these children need a permanent home.  The evidence is clear and convincing supporting termination of the father's parental rights under Iowa Code section 232.116(1)(f).

At the time of the termination hearing, the father requested a guardianship be established to place the children with the paternal aunt.  The father moved for a continuance of the termination hearing in order to complete a home study of the proposed guardian.  The father stated his goal in filing the motion was eventually to have the children placed with him.  The juvenile court denied this motion, stating that any information relevant to the home study could be introduced in the termination hearing to assist the court.  We review the juvenile court's decision on a motion to continue for an abuse of discretion.  *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996).  We reverse only if injustice will

---

[3] We reject the father's suggestion that the grandfather's leaving the children with the mother for five days, contrary to court order and against DHS direction, constituted any kind of "trial period" or in any way tolls the period of time the children were removed from the parents' custody.

result to the party desiring the continuance. *Id.* At the time of the termination hearing, the children had been under DHS supervision for over three years and out of the father's care for over twelve months. The permanency goal had previously been changed to termination of parental rights. Whether the paternal aunt might have been an appropriate placement for the children was not a strong enough consideration to delay the termination hearings further. The father does not identify any injustice he suffered as a consequence, and we find none. The juvenile court did not abuse its discretion.

The father also contends the juvenile court erred in not establishing a guardianship with the paternal aunt.[4] If the grounds for termination of parental rights have been shown, termination is in the child's best interest. *In re L.M.F.*, 490 N.W.2d 66, 67-68 (Iowa Ct. App. 1992). The juvenile court found the children have been the subject of services since they were very young and are in need of stability, which a guardianship with the paternal aunt will not provide. We agree. Creating a guardianship with a view towards reuniting with the parents is not possible because children of this young an age cannot simply wait for mature and responsible parenting. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We affirm denial of the request for guardianship.

For the preceding reasons, we affirm termination of the mother's parental rights as she waived all issues on appeal, and we affirm the father's parental

---

[4] The father cites as support Iowa Code section 232.116(3)(c) which provides, if the juvenile court finds a statutory ground for termination satisfied, it need not order termination if to do so would be detrimental to the child based on the closeness of the parent-child relationship. This provision operates independent from the option of establishing a guardianship for a child in need of assistance; it is therefore inapposite.

rights under Iowa Code section 232.116(1)(f); we find no abuse of discretion in the juvenile court's denial of the motion to continue; and we affirm its denial of the request to establish guardianship.

**AFFIRMED ON BOTH APPEALS.**