# IN THE COURT OF APPEALS OF IOWA

No. 14-1990
Filed February 11, 2015

**IN THE INTEREST OF G.W.,**
**Minor Child,**

**B.H., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Plymouth County, Robert J. Dull, District Associate Judge.

The father appeals the juvenile court's termination of his parental rights to his son, G.W. **AFFIRMED.**

Chad Thompson of Thompson, Phipps & Thompson, L.L.P., Kingsley, for appellant father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Darin J. Raymond, County Attorney, and Amy K. Oetken, Assistant County Attorney, for appellee State.

Kathryn Stevens of the Juvenile Law Center, Sioux City, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**VOGEL, P.J.**

The father appeals the juvenile court's termination of his parental rights to his son, G.W. He argues the State failed to prove grounds to terminate his rights under Iowa Code section 232.116(1)(d) and (f) (2013), and that termination is not in G.W.'s best interests. We conclude that because the father has had very little contact with G.W., and particularly given his unresolved substance abuse issues, the juvenile court properly terminated the father's rights under paragraph (f). Furthermore, termination is in G.W.'s best interests. Consequently, we affirm the order of the juvenile court terminating the father's parental rights.

G.W., born December 2007, first came to the attention of the Department of Human Services (DHS) when it was discovered the mother was exposing him to methamphetamine and marijuana. He tested positive for amphetamine, methamphetamine, and marijuana. G.W. was removed from the home and was first placed in the care of his grandmother, then with his maternal great aunt. The father resides in Melrose, Florida, and has never had custody of G.W. The father was not present when the events that led to G.W.'s removal took place, nor did he offer to be a placement option for G.W. upon his removal.

Following the mother's successful completion of substance abuse treatment, G.W. was returned to her care. Several review hearings were held during the pendency of the proceeding, of which the father attended three. On May 17, 2013, the father tested positive for cocaine, although he denied he had any substance abuse issues. He also has several criminal convictions in Florida, including driving while intoxicated, public intoxication, domestic abuse, opposing an officer without violence, and possession of cocaine. Due to this history, DHS

requested that the father complete a substance abuse and mental health assessment. However, he failed to obtain the requested evaluations, and though he reports he completed substance abuse treatment as a condition of his criminal probation, no documentation was offered supporting his assertion.

The father has had very little contact with G.W. After visiting him a few times in Iowa, and on three occasions when the mother brought G.W. to Florida, the last time the father saw his son was December 2013. This particular supervised visit was prior to a review hearing, and during the visit, G.W. began acting up. The father became very frustrated and left the visit; he then proceeded to fly back to Florida, without attending the previously-scheduled review hearing.

The father also requested phone calls with G.W. during the pendency of the proceedings, though he was not consistent with regard to participating in the calls. During the few supervised visits, the DHS worker observed that the father interacted appropriately with G.W.; however, at no point was it reported that they shared a strong bond. Additionally, there is evidence in the record the father was not paying the court-ordered child support.[1]

The father was not present at the July 2, 2014 review hearing. The juvenile court included in the follow-up order that a petition to terminate the father's parental rights was to be filed. Citing the lack of substance abuse or mental health assessments, as well as the lack of contact with G.W., the State

---

[1] The father, in his brief, states he is paying child support through the Child Support Recovery Unit. However, he did not cite to anything in the record, and it does not contain an exhibit that would support his claim. Furthermore, a DHS report dated October 8, 2013, states the mother asserted she was not receiving the $115 in child support that the father was required to send each month.

petitioned to terminate the father's parental rights. A hearing was held on November 18, 2014, at which the father did not personally appear, but was represented by counsel. The juvenile court issued an order on November 20, 2014, terminating the father's parental rights pursuant to Iowa Code section 232.116(1)(d) and (f). The father appeals.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

To terminate parental rights under Iowa Code section 232.116(1)(f), the State must prove by clear and convincing evidence the child is four years of age or older, has been adjudicated in need of assistance, has been removed from the physical custody of the parent for twelve of the last eighteen months, and cannot be returned to the parent's care. We further note that termination is appropriate for the noncustodial parent, even when the child is placed with the other parent. *See In re N.M.*, 491 N.W.2d 153, 155 (Iowa 1992).[2]

Upon review of the record, we agree with the juvenile court the State proved by clear and convincing evidence the father's rights should be terminated under paragraph (f). The father has demonstrated very little interest in G.W.'s life—he himself reported to DHS that he had not maintained consistent contact

---

[2] The father asserts that, because G.W. was never removed from his care, the statute is inapplicable. However, given our statutory framework and case law, this argument is without merit. *See In re C.W.*, 554 N.W.2d 279, 282 (Iowa Ct. App. 1996).

with G.W. He has never had custody of G.W. or cared for him in any meaningful manner; rather, his visits have been few and far between, and at the time of the termination hearing, the father had not seen G.W. for nearly one year. Specifically, there was no evidence the father attempted to maintain any contact with G.W. after December 2013. Given this lack of a bond, it is clear G.W. cannot be returned to the father's care.

In determining the future actions of the parent his past conduct is instructive, and in this case, the father has not demonstrated more than a minimal attempt to be involved in his son's life. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Although given clear direction as to offered services, the father has failed to participate. Concerns as to his mental health and substance abuse remain as they were when the child was initially adjudicated in need of assistance. It is therefore evident the father has made no progress in his ability to safely care for G.W. within the meaning of paragraph (f), and therefore, the child cannot be returned to his care.

Furthermore, there is evidence in the record the father failed to pay his court-ordered child support. *See In re Kelley*, 262 N.W.2d 781, 785 (Iowa 1973) ("A parent who unjustifiably refuses to meet a support obligation manifests complete indifference to his child."). These issues combined with the father's lack of contact with G.W.—which has resulted in a lack of a bond—support the conclusion that termination of the father's parental rights is in G.W.'s best interest. Consequently, we affirm the order of the juvenile court.

**AFFIRMED.**