# IN THE COURT OF APPEALS OF IOWA

No. 15-0501
Filed August 19, 2015

**IN THE MATTER OF J.G.,**
**Alleged to be Seriously Mentally Impaired,**

**J.G.,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Douglas S. Russell, Judge.

J.G. appeals from a district court order requiring hospitalization due to his serious mental impairment. **AFFIRMED.**

Kristin L. Denniger, Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Gretchen Witte Kraemer, Assistant Attorney General, Janet M. Lyness, County Attorney, and Elizabeth Dupuitch, Assistant County Attorney, for appellee State.

Considered by Doyle, P.J., and Mullins and Bower, JJ.

**DOYLE, P.J.**

J.G. appeals the district court's order finding him to be seriously mentally impaired and requiring his hospitalization. We affirm.

## I.   *Background Facts and Proceedings*

J.G. is currently serving a four-year sentence for assault and domestic abuse assault. He is scheduled to be discharged sometime in August 2015. In May 2014, J.G. assaulted a peer while at the Mt. Pleasant Correctional Facility. Several months later, in July, J.G. lunged at staff and made threats to assault them while at the Clarinda Correctional Facility. In October, while at the Clarinda facility, J.G. destroyed items in his cell by smearing feces and urine on them, threatened to assault staff, and tied a bag around his head. In November, J.G. again destroyed items in his cell, tore up his mattress, played with feces, and plugged the toilet. He was emergently treated at least three times in October and November with medications due to extreme agitation and disruption.

On November 20, 2014, J.G. was transferred to the Iowa Medical and Classification Center (IMCC) in Coralville. An application for order of involuntary hospitalization was filed and on December 16, 2014, a judicial hospitalization referee entered an order pursuant to Iowa Code section 229.13 (2013) finding J.G. to be seriously mentally impaired and ordering him to be placed for a complete psychiatric evaluation and appropriate treatment at the Mental Health Institute (MHI) in Independence. The order further provided that J.G.'s "actual transfer of placement to MHI Independence is subject to the term of [his] present incarceration, if applicable, and a safety and security assessment by MHI staff." J.G. remained incarcerated at IMCC in Coralville.

J.G. appealed the referee's order to the district court. A hearing was held on March 9, 2015. Dr. Keller, a doctor at IMCC, and J.G. testified at the hearing. The district court entered its ruling the same day concluding:

> The State of Iowa has established by clear and convincing evidence that [J.G.] is seriously mentally impaired as defined by [Iowa Code] section 229.1(17). The Court further concludes by clear and convincing evidence that [J.G.] lacks insight into his illness and lacks sufficient judgment to make responsible decisions with respect to his medical treatment, particularly the requirement of medication when not under commitment and would be at risk to himself and others if not under civil commitment for appropriate psychiatric monitoring and treatment. The Court concludes that the commitment should remain in place, that the current alternative placement at IMCC is appropriate, and that if [J.G.] takes the prescribed medication as directed, the commitment will be serving its purpose.

The court denied and dismissed J.G.'s appeal. J.G. now appeals.

## II. Standard of Review

We review sufficiency of the evidence challenges in involuntary commitment appeals for errors at law. *See In re B.B.*, 826 N.W.2d 425, 428 (Iowa 2013). The district court's findings of fact are binding on us if supported by substantial evidence. *See In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998). "Evidence is substantial if a reasonable trier of fact could conclude the findings were established by clear and convincing evidence." *Id.* Clear and convincing evidence "means that there must be no serious or substantial doubt about the correctness of a particular conclusion drawn from the evidence." *See B.B.*, 826 N.W.2d at 428.

## III. Serious Mental Impairment

J.G. contends the State failed to prove by clear and convincing evidence that he is seriously mentally impaired. Iowa Code section 229.1(17) provides

that a person is "seriously mentally impaired" where the person is mentally ill and, "because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment," and is likely, if allowed to remain at liberty, to inflict physical injury on himself or others or to inflict emotional injury on the designated class of persons. *See also B.B.*, 826 N.W.2d at 432. "Likely" is construed to mean "probable or reasonably to be expected." *In re Oseing*, 296 N.W.2d 797, 801 (Iowa 1980). "[T]he endangerment element requires a predictive judgment, based on prior manifestations but nevertheless ultimately grounded on future rather than past danger." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986) (internal quotation marks omitted). The danger the person poses to himself or others must be evidenced by a "recent overt act, attempt or threat." *Id.* (internal quotation marks omitted). "In the context of civil commitment . . . an 'overt act' connotes past aggressive behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury." *In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988). Overt acts include behavior such as threats to kill. *See id.* at 379.

Dr. Keller, board certified in adult psychiatry, testified J.G.'s "diagnosis currently has been Schizoaffective Disorder, Bipolar type," which is considered a mental illness under DSM-V. The doctor's March 4, 2015 report, considered by the court, states the same diagnosis. The report also indicates that in the doctor's judgment, J.G. is mentally ill. At the hearing, the doctor opined J.G. was seriously mentally impaired. We find this evidence sufficient to establish J.G. is mentally ill.

At the hearing, Dr. Keller also opined J.G.'s "judgment is so impaired and so incapacitated that he's not able to choose the proper course of treatment for himself," and that J.G. was not capable of realizing and making rational decisions with respect for his need for treatment. The doctor explained:

> [J.G.] initially was compliant with medications on the basis of this order; otherwise, he had been taking medications that he believed would be helpful but weren't effective and they were, as he had told me, the easiest to get off in the community when he left.
>
> I have been able to at least start these medications that have partially treated him, but he continues to have delusional thoughts about his past, his military history, various other aspects including his family life.
>
> He remains disorganized in giving me his history. I still have limited history from him, and I do believe that even with his last visit he has ideas that he's receiving different medications than what's been prescribed despite all the orders remaining the same.
>
> I did note for him that we did have a change in one of the generic medications which was the Depakote. We went from a gray tablet to a white tablet, but he believes the other medications have changed and have been changing.
>
> So I believe that he has managed to maintain some improvement in our structured care in the mental health unit, but I believe he remains at the disorganized high risk of stopping his medications.

The doctor also testified he believed commitment was necessary in order to enable J.G. to continue his medication. The doctor's March 4 report also states J.G. is not capable of making responsible decisions with respect to his treatment. We find this evidence sufficient to establish J.G. lacks sufficient judgment to make responsible decisions with respect to his treatment.

Dr. Keller's March 4 report indicates, in the doctor's judgment, that J.G. is likely to injure himself or others. The report explains:

> He had a history when not on meds of assaulting peers and assaulting staff. In October [2014] he tied a bag around his head, and in early November [2014] he tore up things in his cell and smeared feces. This combined with his history of agitation when off

> medication is very disruptive to the unit. When not on consistent medications or ineffective medication, he had been agitated and made numerous verbal threats to staff besides the above noted disruptions and fights.

The report also indicates that in the doctor's judgment, J.G. is likely to inflict severe emotional injury on those unable to avoid contact with him, explaining that if J.G. "is not on medications, he can become very activated and not rest at night keeping peers up making noises and being loud, yelling at unseen stimuli, etc." At the hearing, the doctor also opined J.G. would be a danger to himself if left untreated. In particular, it was the doctor's opinion that if left untreated, J.G. was likely to inflict serious emotional injury on those who are unable to avoid contact. He explained, "[J.G.] has displayed in the past very disruptive actions on the units he's been on. Currently, again, there have been some complaints; but he has been more redirectable since on treatment. But without treatment, I do believe that he will decompensate."

J.G. argues the "endangerment element" was not proven by clear and convincing evidence because there were no recent overt acts, attempts, or threats. To support this contention, J.G. claims there were no incidents beyond May of 2014—approximately ten months prior to the hearing on the appeal from the hospital referee's decision. We disagree. The record shows multiple threats to harm peers and staff, assault on staff, and self-harm, including: May 2014, J.G. assaulted a peer; July 2014, J.G. attempted to assault a correctional officer and continually made threats to staff; October 2014, J.G. destroyed his cell, threatened to assault staff, and tied a bag around his head; and November 2014,

J.G. again destroyed his cell and was extremely agitated and disruptive, at which time he was moved to the IMCC and adjudged "seriously mentally impaired."

The hospitalization hearing was held on December 16, 2014. There can be no genuine dispute—and J.G. did not claim otherwise at the hearing—that the incidents in 2014 (particularly the October and November incidents) were "recent overt acts." The appeal hearing was held on March 9, 2015, almost three months after the hospitalization hearing. The nature of the hearing was a trial de novo. *See* Iowa Code § 229.21(3)(c). Since the time of the hospitalization hearing, J.G. has been under court-ordered treatment and on consistent medications; as a result, and as hoped, his condition has improved, and he has ceased the threats to staff. We agree with the State that although a recent overt act is required to prove the dangerousness element, the focus is not solely on the temporality of the act, particularly under the circumstances presented here.

The endangerment element "requires a predictive judgment, 'based on prior manifestations but nevertheless ultimately grounded on future rather than past danger.'" *Mohr*, 383 N.W.2d at 542. Dr. Keller testified J.G. was so seriously mentally impaired that J.G. was not able to choose the proper course of treatment for himself. Although J.G. managed to maintain some improvement in the structured care of the mental health unit, Dr. Keller believed J.G. remained "at the disorganized high risk of stopping the medications." The doctor believed J.G. would be a danger to himself if left untreated. The doctor opined J.G. is likely to inflict serious emotional injury on those who are unable to avoid contact with him if J.G. is left untreated. Finally, the doctor felt commitment was necessary in order to enable J.G. to continue his medications. Taking all of the

above into consideration, we find the evidence sufficient to support the trial court's finding that J.G. is likely to injure himself or others if released without treatment.

## IV.    *Continuance*

J.G. argues the district court abused its discretion in denying his request for a continuance. Denial of a motion to continue is reviewed for an abuse of discretion. *See In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996).

Before cross-examining Dr. Keller, J.G. moved to continue the proceedings "until he can get some further information and documents for his own benefit." The court denied the motion and the hearing proceeded. He did not reveal what "further information and documents" he sought at the hearing and he does not do so on appeal. Under the circumstances, the district court did not abuse its discretion in denying the motion to continue.

## V.    *Conclusion*

Because there is sufficient evidence to conclude J.G. is mentally ill, lacks sufficient judgment to make reasonable decisions as to his treatment, and that without continued involuntary commitment and medical treatment he is likely to injure himself or others, we agree with the district court that J.G. is "seriously mentally impaired as defined by section 229.1(17)." Consequently, we affirm the district court's ruling on appeal.

**AFFIRMED.**