# IN THE COURT OF APPEALS OF IOWA

No. 18-1386
Filed March 6, 2019

**IN THE INTEREST OF M.P.,**
**Minor Child,**

**B.G., Father,**
　　Appellant.

_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.

A father appeals the termination of his parental rights to his child. **AFFIRMED.**

William A. Lansing of William A. Lansing, P.C., Dubuque, for appellant father.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Kristy Hefel, Dubuque, guardian ad litem for minor child.

Considered by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Judge.**

A father appeals the termination of his parental rights to his child, born in 2017.[1]

## I.    *Background Facts and Proceedings*

The department of human services became involved with the family shortly after the child's premature birth.  The department social worker assigned to the case testified the agency's concerns centered on the "[p]arents' cognitive delays; inability to meet the basic needs of [the child]; . . . history of both using . . . marijuana; mental health issues; [and] cleanliness of [their] trailer."

The department initiated safety services to assist the parents.  The services were largely unsuccessful.  A department employee reported the parents "do not hold [the child] correctly, they do not support her head, they do not pick her up in a safe manner, they have not been feeding her every 3 hours as instructed and are not capable of meeting her daily needs."

The State applied to have the child temporarily removed from the parents' custody.  The juvenile court granted the application and later adjudicated the child in need of assistance pursuant to the parents' stipulation.

After several months of services, the State petitioned to terminate the parents' rights to the child.  The juvenile court granted the petition pursuant to Iowa Code section 232.116(1)(h) (2018), which requires proof of several elements, including proof the child cannot be returned to the parents' custody.

---

[1] The mother's appeal from the termination of her parental rights was dismissed as untimely.

On appeal, the father argues (A) the department did not make reasonable efforts to reunify him with his child and (B) the juvenile court should not have denied his request for an extension of time to work towards reunification.

## II.  Analysis

### A.  Reasonable Efforts

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent."  *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (quoting *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000)).  The father argues the department failed to fulfill its mandate.  In his view, the agency did not accommodate his "significant learning and mental health difficulties" and "provided no services . . . that were likely to be effective in producing change."

The juvenile court found otherwise.  The court stated:

The Department was aware at the outset of the case of the parents' intellectual deficits.  Services were catered to the parents with this in mind including reading written materials to the parents and demonstrating parenting skills.  The service provider testified that at one point there were three different professionals working with the parents regarding parenting skills.  At no time during the pendency of the child in need of assistance case did the parents request any additional or different services, nor did they indicate they were not understanding the skills being taught to them.

On our de novo review, we agree with the court's assessment.

The service provider in charge of visits testified the parents never asked her to provide services in a different way.  Despite the absence of such a request, she read to them and provided role-modeling and examples on how "to do things."  On one occasion, the father asked her to read certain insurance paperwork to him.  She did so, and he obtained further assistance from the service provider in charge of the matter.

During visits, the service provider testified she had to prompt the parents to properly care for the child. While she acknowledged "things . . . progressed because of [her] continued prompting," she said the parents "struggl[ed] with continuing to do the basic things, cleaning the bottles, holding [the child], safely meeting her needs during interactions." She did not envision a decrease in the supervision level of visits.

The service provider also enumerated other services designed to assist the parents with the development of parenting skills. She noted that a person came to their home to train them on childhood development and the department enrolled them in a separate parenting class. Each parent also was assigned a service provider "who came in and worked with them on basic skills, cleaning, whatever their goals were," which she thought were "hygiene, cleaning, cooking." Although the father did not get along with the worker assigned to him, the service provider noted that "he was on the wait list" for another worker.

With the cleaning assistance afforded the parents, the condition of their trailer improved. However, a department social worker agreed the improvement was "not enough that it would be safe for an infant to live in."

On this record, we conclude the department afforded the parents services tailored to their intellectual abilities and needs. The department satisfied its reasonable-efforts mandate, and the juvenile court appropriately terminated the father's parental rights under section 232.116(1)(h).

## B.    *Extension of Time*

The father moved for an extension of time to work towards reunification. He asserted he was not provided the opportunity to demonstrate his ability to care for

the child and the rehabilitation of his living quarters was expected to be completed within the ensuing month or two.

The juvenile court denied the extension motion. The court reasoned that an extension of time likely would not "even result in interactions progressing to partially supervised, let alone sufficient progress for the child to return home." The record supports the court's finding.

A department social worker reported that supervised visits with the child had to be reduced from three per week to two per week because of "significant relationship issues" between the parents that potentially compromised the mother's safety, as well as allegations that the father "was using" drugs "in the home." Those visits were not increased because of the parents' lack of progress. The social worker reported that, after seven "months of services, the parents still struggle[d] to be able to meet the basic needs of their daughter during the visits that [were] fully supervised and provided weekly." She recommended against an extension of time.

We conclude the juvenile court did not abuse its discretion in declining to grant an extension of time to facilitate reunification. *See In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). We affirm the termination of the father's parental rights to the child.

**AFFIRMED.**