## IN THE COURT OF APPEALS OF IOWA

No. 19-1637
Filed January 9, 2020

**IN THE INTEREST OF K.M., S.M., and N.M.,**
**Minor Children,**

**N.M., Mother,**
        Appellant,

**D.M., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Des Moines County, Jennifer S. Bailey, District Associate Judge.

A mother and father separately appeal from the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**


Heidi D. Van Winkle of Van Winkle Law Office, Burlington, for appellant mother.

Andrew L. Mahoney of Crowley & Prill, Burlington, for appellant father.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Brent Ruther of Aspelmeier, Fisch, Power, Engberg & Helling, PLC, Burlington, attorney and guardian ad litem for minor children.


Considered by May, P.J., Greer, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**MAY, Presiding Judge.**

A mother and father separately appeal from the termination of their parental rights to their children, K.M., S.M., and N.M. Both parents challenge the statutory grounds authorizing termination and whether termination was in the children's best interests. The father also argues the juvenile court should have granted additional time to work toward reunification.

**I. Facts and Prior Proceedings**

This family first came to the attention of the Iowa Department of Human Services (DHS) in 2015 due to concerns of neglect and the parents' use of methamphetamine.[1] At that time, the children[2] were adjudicated CINA and removed from the family home. Eventually, the children were returned to the parents, and the CINA proceedings were dismissed in November 2016.

Unbeknownst to DHS, the parents resumed using methamphetamine in 2017.

By March 2018, DHS became involved with the family again. The mother tested positive for methamphetamine and amphetamines. She then entered Hope House treatment facility. At the time, the father was in a halfway house for a probation violation. Less than a month after leaving the halfway house, the father tested positive for methamphetamine.

By May 2018, both parents were on the run for probation violations.[3] During this time, they did not participate in DHS services, including visitation. And they

---

[1] K.M. was not born yet.
[2] The first child-in-need-of-assistance (CINA) adjudication involved, N.M., S.M., and the mother's two older children, who are not at issue in the current proceeding.
[3] The parents were convicted of second-degree burglary in September 2015.

continued to use methamphetamine. Both parents were eventually apprehended and incarcerated.

Following her release, the mother elected to enter the House of Mercy treatment center in March 2019. While at House of Mercy, the mother engaged in several treatment and therapeutic programs.

Also in March, the father was released from prison. He sought out DHS to inquire how to regain custody of the children. He found gainful employment and engaged in substance-abuse treatment three months after his release.

The State petitioned for termination of both parents' parental rights. Following three days of testimony, the juvenile court terminated the parents' rights, pursuant to Iowa Code section 232.116(1)(h) (2019) with respect to K.M. and Iowa Code section 232.116(1)(f) with respect to N.M. and S.M.

Both parents appeal.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citing *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010)).

## III. Analysis

We generally use a three-step analysis to review the termination of parents' rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1)

whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. Finally, we consider any additional arguments raised by the parents.

**A. Grounds for Termination**

We first determine whether the State has proved grounds for termination under Iowa Code section 232.116(1). *Id.* The juvenile court found grounds for termination under paragraph (h) with respect to K.M. and paragraph (f) with respect to N.M. and S.M.

Section 232.116(1)(f) authorizes termination of a parent's parental rights when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Section 232.116(1)(h) is nearly identical except it applies to a child who is "three years of age or younger" and only requires the child be removed "for at least six months of the last twelve months, or for the last six consecutive months."

To the extent the parents challenge the first three elements under paragraphs (f) and (h), we find those elements satisfied. However, it appears the parents focus their attention on the fourth element, which is identical under

paragraphs (f) and (h). It requires clear and convincing evidence the children could not be safely returned. *See* Iowa Code § 232.116(1)(f)(4), (h)(4).

With respect to the mother, we find the children cannot be safely returned to her care. She highlights her sobriety since being arrested for violating probation in 2018.[4] While this is commendable, we place little stock in it because she was under supervision, either in prison or at House of Mercy, for the entirely of that period. *See In re A.H.*, No.19-0605, 2019 WL 3317411, at *3 (Iowa Ct. App. June 24, 2019) (noting a period of sobriety while under supervision cannot be relied upon to believe the parent's future conduct will differ from past conduct).

Like others involved in this case, we find the mother's recent progress to be praiseworthy. But her progress is just that—recent. She has used methamphetamine since she was seventeen years old. At the time of the termination hearing, she was thirty-three. Given the mother has used methamphetamine for nearly half her life, we are not confident her relationship with methamphetamine is over. We note the 2015 CINA proceedings were dismissed after the mother obtained sobriety—and yet she relapsed mere months after DHS ended its involvement. We are concerned history will repeat.

And by the mother's own admission, she cannot care for her children while abusing methamphetamine. Upon removal, the children were in poor health. One child was ninety percent deaf due to untreated ear infections. Their teeth were in

---

[4] The mother and father both also note the mother recently had a child and claim she is adequately caring for "a helpless baby." This information is not in our record, and we do not consider it.

poor condition. One child had a MRSA[5] infection on her genitals. The youngest child's speech development was delayed. He mostly communicated through grunting and pointing. All three children had head lice. These issues were largely remedied after the children were removed from the home, indicating they resulted from a lack of parental care.

Given the mother's track record with substance abuse and neglectful parenting, we agree with the juvenile court that the children could not be safely returned to her care.[6]

With respect to the father, we reach the same conclusion.[7] Again, we commend his recent positive life changes. But we do not find these changes eliminate the need for removal. Like the mother, the father has a long history of methamphetamine abuse and a relatively short period of sobriety. As a result, we fear he may relapse in the future, particularly because he has identified every-day life and stress as triggers.

He also has had limited engagement with parenting services. He often missed scheduled sessions with a family safety, risk, and permanency services provider because he forgot or had to work. The father highlights his successes at his new job as evidence he turned over a new leaf. And we agree parents should

---

[5] MRSA is an acronym for methicillin-resistant staphylococcus aureus, a type of bacteria.

[6] To the extent the mother challenges the reasonable efforts aspect of the State's ultimate proof, we find the argument waived because she merely makes passing reference to it. *See In re O.B.,* No.18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

[7] Notably, the father advocates more strongly that the children be placed with the mother than in his care.

work when necessary to provide for their families. But the father fails to appreciate the need to balance work with the other responsibilities of parenting.

Like the juvenile court, we find the children could not be safely returned to the father's care.

Our first step in our analysis is complete.

**B. Best Interests**

Next, we consider the best interests of the children. *See* Iowa Code § 232.116(2). Our analysis is governed by Iowa Code section 232.116(2), which states:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren].

Both parents point to their bonds with the children as evidence that termination is not in the children's best interests. But safety is a "defining element[]" of our best-interest analysis. *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially); *see* Iowa Code § 232.116(2) (noting "the court shall give primary consideration to the child[ren]'s safety"). And the record is clear these children suffered while in the parents' care.

These children need and deserve permanency. Termination would allow the children to be adopted by their foster families. *See* Iowa Code § 232.116(2)(b). The foster mothers testified the children are integrated into their respective homes and they are committed to continuing the relationships between these children. These foster families provide the structure, affection, and safety that all children deserve.

The district court correctly determined termination is in the children's best interests. The second step in our analysis is complete.

**C. Exceptions**

We next consider if any of the exceptions to termination outlined in section 232.116(3) apply. "[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3). *A.S.*, 906 N.W.2d at 476. Neither parent argues a section 232.116(3) exception applies. So we move to our final step in our analysis.

**D. Additional Claims**

The father argues, and the mother mentions in passing, that the need for removal would not exist in six months. So, they suggest, the juvenile court should have granted additional time to work toward reunification.

The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

We find the need for removal is unlikely to obviate in the near future. The parents' "past performance is indicative of the quality of care [either] is capable of providing in the future." *In re N.A.S.*, No. 13-0074, 2013 WL 988895, at *2 (Iowa Ct. App. Mar. 13, 2013); *accord In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). Given the parents' long history of substance abuse and inability to care for the children, we see no reason to believe the need for removal will be extinguished within six months' time.

And the record is clear that the ongoing CINA proceedings are negatively impacting the children. One child experienced anxiety, headaches, constipation, and hives leading up to court hearings and expressed concern about returning to the parents. Another would wet her bed and throw tantrums following visits with the parents. To continue this process another six months would further harm the children. And we will not deny these children the ability to permanently join their foster families now in the hope the parents will be able to provide adequate care someday. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (noting termination should not be delayed in the hopes that a parent may someday become a suitable parent).

**IV. Conclusion**

The juvenile court properly terminated both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**