# IN THE COURT OF APPEALS OF IOWA

No. 24-1226
Filed October 2, 2024

**IN THE INTEREST OF F.C.,**
**Minor Child,**

**F.C., Father,**
        Appellant,

**J.C., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Mahaska County, Patrick McAvan,

Judge.


        A mother and father each appeal the termination of their parental rights,

arguing that more time for reunification should be provided and that termination is

not in the best interest of the child. **AFFIRMED ON BOTH APPEALS.**


        Maddison A.E. Denny of Broerman, Lindgren & Denny, Oskaloosa, for

appellant father.

        Denise M. Gonyea of McKelvie Law Office, Grinnell, for appellant mother.

        Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney

General, for appellee State.

        Misty White, Sigourney, attorney and guardian ad litem for minor child.


        Considered by Schumacher, P.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

A mother and father separately appeal the termination of their parental rights to their son under Iowa Code section 232.116(1) (2024). The juvenile court found that termination was in the child's best interest and that no statutory exception applied. On appeal, the mother and father each argue that more time for reunification should be provided and that termination is not in the son's best interest.

Because neither the mother nor the father asked the juvenile court to grant more time for reunification, they failed to preserve error on that issue. And assuming that their general resistance to termination at the hearing preserves their best-interest challenges, we agree with the juvenile court that termination is in the son's best interest. The parents' failure to obtain substance-use or mental-health treatment, the need for permanency in the son's life, and the son's positive foster-home environment all support this conclusion. So we affirm on both appeals.

## I. Factual Background and Proceedings

In August 2023, a newborn boy came to the attention of the Department of Health and Human Services ("HHS") when his mother tested positive for methamphetamine at the hospital after giving birth. The son also tested positive for methamphetamine and amphetamines. And so, three days after his birth, he was removed from the mother and father's care and custody following an ex parte removal order and a removal hearing. The son has never resided with his parents.

The mother and father's drug use—a major factor in the child being removed from their care—has continued to be an issue. The father told the HHS worker that he has been using drugs for thirty years. And he told the HHS worker

that the mother had been using drugs her whole pregnancy. She also later admitted to this. The parents were ordered to get substance-use and mental-health evaluations, submit to random drug testing, and then follow the recommendations that came from those evaluations. The mother did participate in one substance abuse evaluation in December 2023. That evaluation diagnosed the mother with an amphetamine dependence and recommended she complete a residential treatment program. Despite efforts by the HHS worker to enroll the mother and personally take her to the treatment program, the mother twice failed to start the program. And ultimately the mother never participated in that program or any other treatment. The father has also never participated in any treatment nor even an assessment. The HHS worker testified that both parents have shown that they have not stopped using drugs or taken steps to do so. Indeed, the mother admitted to using drugs as recently as spring 2024.

Neither parent has participated in a mental-health assessment, counseling, or treatment. They have refused the help of a parent partner and other parenting-skills services offered by HHS. And they have both missed many of the scheduled visitation times with the child—the mother missed roughly half and the father nearly three-quarters. When they have attended visits, each has struggled to demonstrate basic parenting skills and neither shows an understanding of the current needs of the son, including not knowing how to prepare bottles or give proper dosages of medicine for children. The mother has made some progress, recently successfully changing diapers and buckling the son in a car seat.

Both parents have also struggled to maintain housing. At the start, they lived with the father's stepfather—who has a history of drug use and, according to

the father, still uses methamphetamine. The HHS worker testified that the parents told her that they have lived in a tent at different locations and in car washes, laundromats, and hotels around the area. And at the time of the hearing, the parents were back to living with the father's stepfather. The mother has been approved for federal housing assistance but has not been placed in a home yet. Neither parent is employed.

The son has been living with his current foster family since February 2024. They have expressed willingness to adopt him if that option becomes available. The son is happy and has been progressing developmentally, meeting his milestones. He is also getting the appropriate medical care he needs. The HHS worker testified that she did not believe that the son could be returned to either parent the day of the termination hearing or any time in the future. The guardian ad litem also recommended terminating both parents' parental rights.

After a June 2024 hearing—by which, the son was ten months old—the juvenile court found that the grounds of termination were met under Iowa Code section 232.116(1)(h) for the mother and under paragraphs "e" and "h" for the father. The court also found that it was in the best interest of the son for both parents' parental rights to be terminated. The court explained that "the child could not be safely returned to either parent," reasoning that they "have not successfully addressed the most basic of the department's recommendations and court's orders—substance abuse and mental health services. Neither parent [has] a stable home for themselves, let alone a child. It is time for [their son] to achieve permanency." And the court noted that the son was in a stable foster-care home and the current foster parents "have expressed an interest in adoption." Finally,

the court found that no exception to termination of parental rights under Iowa Code section 232.116(3) applies here. So the court terminated the rights of both parents. And both now separately appeal.

## II. Error Preservation on Request for More Time

The mother and father each argue that rather than terminating their rights, the court should have given them six more months to participate in parenting skill building and substance-use treatment and to find adequate housing. The State argues that they failed to preserve error on this issue because neither parent requested more time for reunification in the juvenile court. Indeed, the parents did not make any argument at all at the hearing. Nor did they testify or present any other evidence.

As a court of appeals, we cannot consider an argument unless it is first raised in the trial court. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). This requirement to preserve error applies just the same to appeals from a juvenile court decision terminating parental rights as any other appeal. *See id.*; *see also In re P.N.*, No. 20-1167, 2020 WL 6482091, at *4 (Iowa Ct. App. Nov. 4, 2020) ("[A] parent cannot request additional time to work toward reunification for the first time on appeal."). The doctrine is not a mere technicality to trip up parties but exists to give the juvenile court the chance to fully address the party's arguments and, when warranted, to fix an error itself "at a time when corrective action can be taken." *In re Marriage of Heiar*, 954 N.W.2d 464, 470 (Iowa Ct. App. 2020) (cleaned up). It also prevents "sandbagging—that is, it does not allow a party to choose to remain silent in the trial court in the face of error, take a chance on a favorable outcome, and subsequently assert error on appeal if the outcome in the trial court is

unfavorable." *State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022) (cleaned up). Because neither parent asked for additional time for reunification in the juvenile court, they did not preserve error. So we do not consider the merits of their arguments.

### III.     Best Interest of the Child

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show that termination is in the child's best interest. *Id.* And finally, the parent bears the burden to show whether a discretionary exception applies that should preclude termination. *Id.* We review a termination decision de novo, giving "respectful consideration" to the juvenile court's fact findings, especially when based on credibility determinations. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).

The mother and father each challenge only the second step—whether it is in the best interest of the son to terminate their parental rights. The State argues that both parents also failed to preserve error on this issue because their only participation at the hearing was cross-examining the State's witness, and neither presented their own evidence nor made any argument.[1] It is questionable whether error was preserved. *See, e.g.*, *In re M.F.*, No. 18-0289, 2018 WL 3057772, at *1 (Iowa Ct. App. June 20, 2018) (holding that parent waived or did not preserve error by only cross-examining the State's witness and not introducing her own evidence

---

[1] The mother also left the hearing as the HHS worker was testifying. She interrupted, "I'm out. I'm leaving. I just can't. I'm good. I don't care." But her attorney remained and, after a break, reported that the mother was "emotionally distraught" and wished for the attorney to proceed without her.

or objecting to any of the State's exhibits). But even assuming the parents preserved error by their general resistance to termination, we agree that termination of their parental rights is in the son's best interest.

The best interest of the child is the "paramount concern in a termination proceeding." *L.B.*, 970 N.W.2d at 313. We consider both the son's long-range and immediate best interests. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *see also In re C.W.*, 554 N.W.2d 279, 282 (Iowa Ct. App. 1996).

The mother argues termination of her rights is not in the best interest of the son because she "is very emotionally attached to the child and [she has] made her best efforts to comply with the HHS requirements." And the father argues that his lack of participation in visits and services was due to phone and transportation issues, he has made progress toward obtaining housing, and that he has "emotionally bonded with the child and when he is sober, he is a dedicated and loving parent." But none of these arguments overcomes the weight of evidence showing that termination of both parents' parental rights is in the best interest of the son.

The parents have failed to participate in substance-use or mental health treatment or any of the other services repeatedly offered to them by HHS. Rather, they continue to use drugs, showing no sign that either could provide for the son's current or long-term needs and growth. And the limited interactions with their son during visits confirm that he cannot be safely returned to the custody of either

parent now.  Meanwhile, the son is doing well in a stable foster-home environment interested in giving him permanency through adoption.

While we do not doubt the parents love their son, it is in his physical, mental, and emotional best interest to terminate their parental rights here.  We thus affirm the juvenile court's termination of the father's and mother's parental rights.

**AFFIRMED ON BOTH APPEALS**.