**IN THE COURT OF APPEALS OF IOWA**

No. 15-1217
Filed September 23, 2015

**IN THE INTEREST OF H.H.,**
**Minor Child,**

**A.H., Mother,**
     Appellant,

**J.H., Father,**
     Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A mother and father appeal separately from the adjudication and disposition orders in a child-in-need-of-assistance proceeding. **AFFIRMED ON BOTH APPEALS.**

Darrin T. Hamilton of Darrin T. Hamilton Law Office, P.C., Newton, for appellant-mother.

Larry J. Pettigrew of Pettigrew Law Firm, Newton, for appellant-father.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Michael K. Jacobsen, County Attorney, and Jonathan Noble, Assistant County Attorney, for appellee.

Jane Odland of Odland Law Firm, P.L.L.C., Newton, attorney and guardian ad litem for minor child.

Considered by Doyle, P.J., and Bower and McDonald, JJ.

**MCDONALD, JUDGE.**

A mother and father separately appeal from the adjudication and disposition orders in this child-in-need-of-assistance (CINA) proceeding. The mother and father both argue the juvenile court erred in adjudicating and confirming their child, H.H., to be in need of assistance under Iowa Code section 232.2(6)(o) (2015) and seek dismissal of the CINA petition. We affirm the juvenile court's orders on both appeals.

I.

H.H. was born in October 2014. Umbilical cord testing administered at the time of birth was positive for amphetamine and methamphetamine. The Iowa Department of Human Services ("IDHS") learned of the child's positive test and removed her on an emergency basis from the care of the parents when both parents refused drug screens. A few days later, on the day of the removal hearing, both parents offered clean drug screens.

Following the removal hearing, the juvenile court ordered removal of the child from the mother's care and custody finding "substantial evidence to support the allegations . . . ." Regarding the father, the juvenile court found the allegations against him were not proved and found that "without evidence of the father's drug use, the Court does not find imminent danger if he is living with the [mother's parents]." Thus, the court returned H.H. to the father's care and custody on the condition that he reside with the child in the home of the father's in-laws. The court further required both parents complete a substance abuse evaluation and follow recommended treatment, submit random drug screens as

requested by IDHS, and cooperate with IDHS and Family, Safety, Risk, and Permanency Services ("FSRP").

The mother continued to live in her parents' home with the father and H.H. and had liberal supervised visitation with H.H. as neither the father nor the mother were employed. The mother completed an IDHS-requested drug screen prior to the pre-adjudication hearing in October, which was negative. The mother was not asked to complete more drug screens because she did not demonstrate any behaviors that would indicate she was using drugs, returned a clean hair stat test, and completed a substance abuse evaluation that did not recommend any further treatment. The father was asked to submit a hair stat test but was unable to complete one because, on one occasion he was not authorized, on another occasion he had shaved his body hair and his head hair was too short, and on another occasion he was unable to get to a testing site because he had a job interview and could not follow up because of unreliable transportation. The father completed a self-reported substance-abuse evaluation that did not recommend further treatment.

In January 2015, the juvenile court held an adjudicatory hearing at which H.H. was adjudicated in need of assistance pursuant to section 232.2(6)(o) because of the presence of methamphetamine and amphetamine in her umbilical cord at birth. The juvenile court ordered that H.H. remain in the care and custody of her father and be returned to the care and custody of her mother, provided that the parents reside with the maternal grandparents until IDHS approved other suitable housing for the family. The court noted the mother was being

cooperative and that all of her drug screens had been negative. The juvenile court also ordered the father to cooperate with a hair stat test.

Following the adjudicatory hearing, IDHS did not request any hair stat tests from the father. The father produced clean urine tests; however, these tests did not comply with the drug-screen requirement because IDHS did not request them and they were not random. Instead, IDHS approved sweat patch testing. On one occasion, the father received a sweat patch for testing but later claimed it fell off the day he received it but did not report the problem until the scheduled removal. In May 2015, the father submitted a sweat patch that came back positive for methamphetamine and amphetamine. The juvenile court ordered H.H. removed from his custody but remain in the mother's care and custody.[1]

In June 2015, the juvenile court held a dispositional hearing confirming H.H. to be in need of assistance. The juvenile court ordered the child to remain in the care and custody of her mother and remain out of her father's care and custody. In regards to the mother, the juvenile court found she "remains in contact with [IDHS], is cooperating with services, and all of her recent drug tests have been 'clean'. Her only remaining issue is one of stable housing except for the continued housing arrangements provided by her parents." The juvenile

---

[1] It is unclear whether the father continued to live with the mother and H.H. at the mother's parents' house following the removal of H.H. from the father's custody in May. At some point before the dispositional hearing in June, the father moved out and did not have a place to live, but he did so at the request of his in-laws rather than by court order or IDHS direction.

court again ordered that the mother and H.H. continue to reside with the mother's parents until IDHS approved other suitable housing.

Regarding the father, the juvenile court found it "would be contrary to the child's welfare due to the father's 'positive' drug screen for methamphetamine and amphetamine as well as his overall refusal to submit or avoidance of requested drug testing." The juvenile court found the father had provided two clean results from his own drug screens, but found these screens did not comply with IDHS's requirements. The juvenile court also noted the father was currently wearing a sweat patch but had failed to have it timely removed so that the results would be available for the hearing. This appeal followed.

II.

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). "In reviewing the proceedings, we are not bound by the juvenile court's fact findings; however, we do give them weight." *Id.* "Our primary concern is the children's best interests." *Id.* "CINA determinations must be based upon clear and convincing evidence." *Id.* Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). The parties raise several substantive and procedural challenges to the adjudication and disposition orders, and we address each in turn.

III.

A.

Both the mother and the father contend the State did not meet its burden of establishing H.H. is in need of assistance pursuant to section 232.2(6)(o) by clear and convincing evidence.  Section 232.2(6) provides:

> "Child in need of assistance" means an unmarried child:
>  . . . .
> (o) In whose body there is an illegal drug present as a direct and foreseeable consequence of the acts or omissions of the child's parent, guardian, or custodian.  The presence of the drug shall be determined in accordance with a medically relevant test as defined in section 232.73.

Iowa Code § 232.2(6)(o).

The mother argues the only positive test for either the mother or the child has been the test performed on the child's umbilical cord following her birth.  Both parents contend the State failed to prove H.H. had an illegal drug present in her body by clear and convincing evidence because the specimen collection form was completed incorrectly and therefore the test was flawed.[2]  They argue the form does not identify the donor, who collected the specimen, the date and time it was collected, and is not certified by the laboratory.  Thus, the improper paperwork, combined with both of the parents' clean drug tests following the child's birth, "raise serious and substantial doubts" as to their exposing the child to illegal drugs.

---

[2] Both parents also argue that the State failed to meet its burden of proof because the meconium and urine testing procedures have a high false positive rate.  However, neither meconium nor urine testing were conducted in this case for the child and neither party has put forth evidence to suggest false positives or any other discrepancies in umbilical cord testing.

Upon our review, we find the form and test results present sufficient evidence that the child was exposed to methamphetamine and amphetamine in utero. The form includes the child's name and date of birth, as well as the name and signature of the nurse who sealed the specimen container and the date and time of when the container was sealed. Further, the test results page includes handwritten notations of the child's first name and a case number, identifies the collector as the same nurse who was identified on the other form as the person who sealed the specimen container, and matches the date and time of the collection to the date and time the specimen container was sealed. Accordingly, we find the State proved by clear and convincing evidence that an illegal drug was present in the child's body as determined by a medically-relevant test and thus the juvenile court did not err in adjudicating H.H. a CINA. *See* Iowa Code § 232.2(6)(o).

B.

The mother next challenges the disposition order. In the disposition order, the juvenile court found the mother's "only remaining issue is one of stable housing." The juvenile court ordered the mother to "continue to reside with the maternal grandparents unless other suitable housing is approved by [IDHS]." The mother argues that she continues to reside with the maternal grandparents, that there are no continuing issues for her to address, and that the juvenile court should have thus dismissed the CINA petition as to her.

As stated above, the State proved by clear and convincing evidence the child was in need of assistance pursuant to Iowa Code section 232.2(6)(o). The

juvenile court entered an order adjudicating H.H. in need of assistance. *See* Iowa Code § 232.96(9) ("If the court concludes that facts sufficient to sustain the petition have been established by clear and convincing evidence and that its aid is required, the court may enter an order adjudicating the child to be a child in need of assistance."). Following entry of the adjudication order, the juvenile court was required to hold a dispositional hearing and enter the least restrictive disposition appropriate under the circumstances. *See* Iowa Code §§ 232.99(1) ("Following the entry of an order pursuant to section 232.96, the court shall, as soon as practicable, hold a dispositional hearing in order to determine what disposition should be made of the petition."), 232.99(4) ("When the dispositional hearing is concluded the court shall make the least restrictive disposition appropriate considering all the circumstances of the case."). The IDHS worker testified he believed the case should remain open with regards to the mother so that IDHS could further test and observe her with the help of FSRP services to ensure that substance abuse was not an issue. The juvenile court concluded that the child was still in need of supervision and that housing remained a concern. This was not in error. *See In re K.N.*, 625 N.W.2d 731, 734 (Iowa 2001) ("[W]e have consistently observed that a juvenile court may not terminate CINA adjudication status unless the purposes of the original dispositional order have been fulfilled and the child is no longer in need of supervision, care or treatment.") (internal quotation marks omitted); *In re C.A.H.*, No. 06-2052, 2007 WL 1062971, at *3 (Iowa Ct. App. Apr. 11, 2007) (holding termination of disposition order and dismissal of CINA petition not warranted where mother

continued to be in need of some services). If continued supervision is unwarranted, the mother may move to terminate the disposition order and discharge the child. *See* Iowa Code § 232.103(1).

C.

The father argues the juvenile court erred in denying his request for counsel at the adjudicatory hearing. He contends he had the right to counsel at the adjudicatory hearing pursuant to Iowa Code section 232.89. He claims he asserted the right to counsel at the hearing and his rights were prejudiced when the juvenile court determined he was eligible to have counsel appointed to represent him but proceeded in the hearing instead of ordering a continuance. The father contends he attempted to find private counsel to represent him up until the morning of the adjudicatory hearing but was unsuccessful. The father testified he "[did not] feel comfortable proceeding without an attorney" and requested a continuance. The juvenile court acknowledged that the father had failed to file a request for appointment of counsel until the afternoon of the adjudicatory hearing despite consenting to a withdrawal of his private counsel two weeks before the hearing and found it was in H.H.'s best interests to proceed with the hearing.

"We review [a juvenile court's denial of] a motion for continuance under an abuse of discretion standard and will only reverse if injustice will result to the party desiring the continuance. Denial of a motion to continue must be unreasonable under the circumstances before we will reverse." *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996) (citation omitted). The father failed to file

a request for court-appointed counsel until approximately one hour before the start of the hearing. The father was able to cross-examine the witnesses. Further, the adjudicatory hearing had been scheduled at ninety days from the date of the pre-adjudication hearing for good cause shown instead of the sixty days required by statute. *See* Iowa R. Civ. P. 8.11. The father was represented by private counsel prior to the adjudicatory hearing and was represented by court-appointed counsel at the dispositional hearing. Therefore, because we find it was in the child's best interests to proceed with the adjudication and the father did not suffer an injustice, the juvenile court's did not abuse its discretion in denying the father's motion to continue.

## D.

The father next argues the juvenile court erred in ordering the father to participate in drug screens. He contends because he did not give birth to the child, he could not have contributed to the child's positive umbilical cord results. He also points to his non-random negative drug screens, the juvenile court's adjudication order in which the court stated that the child's test results were a "direct and foreseeable consequence of the acts of the child's mother," and his substance abuse evaluation that recommended no further treatment as evidence that there were no indications the father used drugs. We conclude the argument is without merit.

The father ignores three critical facts. First, a father can still contribute to a child's in utero exposure to a drug by exposing the pregnant mother to that drug. Second, the juvenile court found the father's actions regarding his drug

testing evidenced an intent to avoid random drug testing, from which an inference could be drawn that the father was using drugs and trying to conceal his usage from IDHS and the juvenile court. Third, the father did in fact test positive for methamphetamine and amphetamine. We find the juvenile court did not err in ordering the father to participate in drug screens.

E.

The father also argues the juvenile court erred in removing H.H. from his custody in May 2015 based upon his testing positive for methamphetamine and amphetamine because the sweat patch test was invalid. He contends the patch was either contaminated during the collection process or that it was not his entirely and the juvenile court erred in not ordering a DNA test of the patch. The father's argument is moot because the case has progressed to disposition. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Any error committed in granting the temporary ex parte [removal] order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order.").

F.

Finally, the father argues the juvenile court erred in ordering that he reside with his in-laws because he was unwelcome there and it "likely hindered the reunification efforts in this case . . . ." We find that the father resided with his in-laws prior to the adjudicatory hearing for several years and did not present any evidence at the time that he was unwelcome in their home. Therefore, we find

the juvenile court did not err when it ordered the father to continue residing with the mother's parents.

## IV.

For the foregoing reasons, we affirm the juvenile court's adjudication and dispositional orders in both appeals.

**AFFIRMED ON BOTH APPEALS.**