**IN THE COURT OF APPEALS OF IOWA**

No. 16-1246
Filed February 22, 2017

**IN THE INTEREST OF K.J.S.,**
**Minor Child,**

**C.S., Mother,**
        Petitioner-Appellee,

**vs.**

**M.F., Father,**
        Respondent-Appellant.
_____


        Appeal from the Iowa District Court for Crawford County, Mary L. McCollum Timko, Associate Juvenile Judge.


        A father appeals the termination of his parental rights under Iowa Code chapter 600A. **AFFIRMED.**


        Zachary S. Hindman of Mayne, Arneson, Hindman, Hisey & Daane, Sioux City, for appellant father.

        Gina C. Badding of Neu, Minnich, Comito, Halbur, Neu & Badding, P.C., Carroll, for appellee mother.

        Jessica A. Zupp of Zupp & Zupp Law Firm, P.C., Denison, guardian ad litem for minor child.


        Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**TABOR, Judge.**

A father, Michael, appeals the juvenile court's order terminating his parental rights to his eight-year-old son, K.J.S. Michael contends he did not abandon his son under Iowa Code section 600A.8(3)(b) (2016) or fail to pay child support without good cause under section 600A.8(4). He also argues termination of his parental rights is not in the best interests of K.J.S. Alternatively, Michael asserts the juvenile court abused its discretion when it denied his motion to continue the termination hearing.

After our independent review of the record,[1] we find clear and convincing evidence supporting the juvenile court's decision to terminate Michael's parental rights, and we agree termination is in the best interests of K.J.S. Michael has made no genuine commitment to maintaining a place of importance in his son's life—not consistently providing financial support and not showing up for visitation for nearly three years, then feebly seeking to reconnect with K.J.S. after seeing him at a family gathering. In addition, we find no abuse of discretion in the district court's denial of Michael's motion to continue.

## I.    Facts and Prior Proceedings

Cassie and Michael had one child together, K.J.S., who was born in 2008. In June 2009, the district court ordered Michael to pay child support. More than one year later, in November 2010, Cassie and Michael filed a stipulation, which

---

[1] Our review of chapter 600A termination-of-parental-rights proceedings is de novo. *See In re R.K.B.,* 572 N.W.2d 600, 601 (Iowa 1998). "We give deference to the factual findings of the juvenile court, especially those relating to witness credibility, but we are not bound by those determinations." *In re G.A.,* 826 N.W.2d 125, 127 (Iowa Ct. App. 2012). We give "due consideration" to the interests of the parents, but the child's best interests are "paramount" in our analysis. *See* Iowa Code § 600A.1.

the district court accepted, agreeing to share legal custody of K.J.S., with Cassie to have physical care and Michael to have alternating weekend visitation.

Michael's child-support payments over the years were few and far between. The Child Support Recovery Unit (CSRU) initiated two contempt actions against Michael between 2009 and 2016. The first action was dismissed in 2011 after Michael agreed to begin making payments. In the second action, initiated in 2012, Michael stipulated he "willfully failed to comply with the [child-support] order despite having the ability to pay." Accepting his stipulation, the district court found Michael in contempt of court and imposed a thirty-day jail sentence, which was suspended pending Michael's regular payments of child support. In April 2013, the court ordered Michael to serve the jail sentence after he again failed to pay. By the date of the termination hearing, Michael owed nearly $4000 in past-due child support.

Michael's contact with K.J.S. was similarly sporadic. In the first two years of the custody arrangement, Michael spent time with K.J.S. on a regular basis. But in December 2012, Michael was arrested on drug-related charges and completely disappeared from K.J.S.'s life. Michael did not call K.J.S., nor did Michael send letters, cards, or gifts.

After his conviction for the December 2012 charges, Michael persisted in his criminal behavior. Michael was placed on probation, but he failed to complete substance-abuse treatment and reported continued use of methamphetamine to his probation officer. In May 2015, Michael was again arrested on drug-related charges. He received a suspended ten-year prison sentence and was placed on probation in late 2015. Michael continued to struggle with substance abuse. In

the month before the termination hearing, Michael tested positive for methamphetamine twice, and by the time of the hearing, he was facing possible revocation of his probation.

In November 2015, Michael saw K.J.S. for the first time in nearly three years. Cassie allowed Michael's father to take K.J.S. to a family Thanksgiving gathering, and unbeknownst to Cassie, Michael was in attendance. According to Cassie, K.J.S. did not recognize Michael.

Following this encounter, Michael tried to reinitiate contact with K.J.S. Michael sent K.J.S. a balloon and card on Valentine's Day 2016, and then sent Cassie a text message on February 24 requesting a weekend visit. Cassie responded: "It has been [four] years, [K.J.S.] does not know you. It is not in his best interest to go with a stranger. To get reacquainted, I think you should come to our house for a couple hours for a little while to get to know him again." But Michael insisted: "Legally, I get him every other weekend. So if this weekend doesn't work, we can start the weekend after." The conversation continued without agreement—Michael pressed for weekend visitation at his parents' home and Cassie countered with an offer to bring K.J.S. for a shorter visit at a local McDonald's restaurant.

Michael again contacted Cassie about visitation a few weeks later, but neither of their positions had changed. Cassie told Michael she had spoken with K.J.S.'s therapist, who believed a short visit at a neutral location would be best. Again, the parties failed to come to an agreement. Michael sent K.J.S. an Easter card, but by the end of March, he stopped contacting Cassie about visitation.

In the midst of the visitation dispute, on March 17, 2016, Cassie filed a petition for termination of Michael's parental rights. A hearing on the petition was scheduled for May 12, but on the day of the hearing, the juvenile court granted Michael a continuance until June 2 to allow him to apply for a court-appointed attorney. On the morning of rescheduled hearing, Michael called his attorney to say he would be unable to attend because his ride to the courthouse in Denison from his home in Des Moines had fallen through. Michael's attorney asked for a continuance at the beginning of the hearing. Cassie resisted, citing Michael's previous continuance. The court denied the request for a continuance, reasoning the excuse "'my ride fell through,' given the gravity of this situation," did not amount to good cause to further delay the proceedings.

Following the hearing, where Cassie and her husband testified about their concerns for K.J.S., the juvenile court terminated Michael's parental rights under Iowa Code section 600A.8(3)(b) and (4). Michael now appeals.

## II.     Waiver or Preservation of Error

As an initial matter, Cassie argues we should not reach the merits of Michael's appeal. She claims Michael either waived his claims or did not preserve error because he failed to file an answer to the termination petition, he failed to personally appear at the termination hearing, and his attorney offered no evidence at the hearing. Michael contends he preserved error because his attorney attended the termination hearing and resisted the petition.

Although Michael did not personally attend the rescheduled termination hearing, his attorney's actions sufficed to show a general resistance to the termination petition. "[T]he general rule that appellate arguments must first be

raised in the trial court applies to . . . termination of parental rights cases." *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). In support of her claim, Cassie relies on *In re M.L.H.*, No. 16-1216, 2016 WL 4803999, at *1 (Iowa Ct. App. Sept. 16, 2016) (holding father did not preserve error when he did not appear at the termination hearing and the father's attorney did not request a continuance, introduce evidence, or argue against termination, instead telling the court "the father had essentially 'given up'") and *In re C.T.*, No. 14-0243, 2014 WL 1714958, at *1 (Iowa Ct. App. Apr. 30, 2014) (finding father failed to preserve error when he did not appear at the chapter 232 termination hearing and his attorney "did not object to the evidence presented, offer evidence, or raise any issue" (quoting *In re P.S.*, No. 11-0516, 2011 WL 2714169, at *1 (Iowa Ct. App. July 13, 2011))). In contrast to the fathers in those cases, Michael could not be perceived as waving a white flag of surrender. He appeared personally at the originally scheduled termination hearing. And although he did not attend the rescheduled hearing because of transportation issues, Michael resisted the petition through his attorney, who cross-examined Cassie and read a statement written by Michael to the court, which emphasized his unsuccessful attempts to visit K.J.S. and his progress toward a more stable life. *See Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 517–18 (Iowa 2012) (noting a parent's physical presence is not necessarily required at a termination hearing when counsel is present).

Nor did Michael's failure to file an answer to Cassie's petition preclude his challenge to the termination. As Michael notes, Cassie cites no authority in support of her claim that an answer is a prerequisite to seeking appellate review. *See* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an

issue may be deemed waiver of that issue."); *cf. Jack*, 822 N.W.2d at 517–18 (acknowledging flexibility in the general rule that termination proceedings are governed by the rules of civil procedure). Moreover, Cassie did not argue to the juvenile court that Michael's failure to answer the termination petition should prevent him from defending at the hearing. *Cf. In re Marriage of Schettler*, 455 N.W.2d 686, 688 (Iowa Ct. App. 1990) ("We have also held that proceeding with a case without taking timely advantage of the default also constitutes a waiver of the right to a default." (citation omitted)).

Accordingly, we turn to the merits of Michael's appeal.

**III.    Analysis**

When a juvenile court terminates parental rights on more than one ground, if one of the grounds is established by clear and convincing evidence, we will uphold the termination. *In re B.L.A.*, 357 N.W.2d 20, 22 (Iowa 1984). We find ample evidence in the record to support termination of Michael's parental rights for abandonment under Iowa Code section 600A.8(3)(b).

**A.    Abandonment**

Michael contends he did not abandon his son within the meaning of chapter 600A because Cassie prevented him from having contact with K.J.S. Michael argues the text messages he sent Cassie requesting weekend visitation beginning in February 2016 should preclude a finding of abandonment.

Under Iowa Code section 600A.2(19), a parent has abandoned a minor child when the parent "rejects the duties imposed by the parent-child relationship . . . which may be evinced by the person, while being able to do so, making no provision or making only a marginal effort to provide the support of the child or to

communicate with the child." A parent of a child who is six months or older is deemed to have abandoned the child unless the parent maintains "substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means," and if the parent has not lived with the child in the year before the termination hearing, by: (1) visits with the child at least once a month when physically and financially able and when not prevented by the child's custodian or (2) regular communication with the child or their custodian when physically and financially unable to visit or when visits are prevented by the child's custodian. *See* Iowa Code § 600A.8(3)(b).

We are skeptical that Michael's contribution of financial support meets the threshold economic-contributions requirement of section 600A.8(3)(b) (requiring "contribution toward support of the child of a reasonable amount, according to the parent's means"). *See In re W.W.*, 826 N.W.2d 706, 710 (Iowa Ct. App. 2012). Since the entry of the 2009 child-support order, Michael's payments have been irregular and largely prompted by contempt applications initiated by the CSRU. But even assuming Michael has met this predicate requirement, we still find Michael has abandoned K.J.S. under subsection (3)(b)(1) for failing to visit K.J.S.

By the time of the termination hearing, Michael had not logged the minimum monthly visits with K.J.S. for nearly three and a half years, and—for the vast majority of that time—Michael made zero effort to contact K.J.S. Michael does not argue he was physically or financially unable to visit K.J.S. Accordingly, Michael abandoned K.J.S. within the meaning of section 600A.8(3)(b)(1), unless the evidence established Cassie prevented visitation.

The record did not show Cassie prevented Michael from visiting K.J.S.[2] Michael does not dispute that Cassie had no involvement with his failure to visit K.J.S. from December 2012 to February 2016—one month before Cassie filed the termination petition. And even after that time, the record does not support a finding Cassie prevented visitation between Michael and K.J.S. As Cassie asserts, after Michael contacted her in February 2016, she offered him visitation, but he refused to take advantage of it. Considering Michael's extended failure to exercise his visitation under the stipulation, his significant criminal history, and his failure to address his long-standing substance-abuse problem, we find Cassie's conditions regarding reintroduction of K.J.S. to Michael were reasonable. *See G.A.*, 826 N.W.2d at 129 (finding mother's request that the father reinitiate contact with his daughter by phone and test free of drugs before having an in-person visit reasonable when the father had not seen the daughter in over a year and had an extensive substance-abuse and criminal history); *see also K.M.*, 2015 WL 1849508, at *5 (finding mother did not prevent contact by failing to respond to text messages requesting visitation when the mother "was

---

[2] Because we find Cassie did not prevent visitation, it is not necessary to reach Michael's argument under section 600A.8(3)(b)(2) that he attempted regular communication with K.J.S. *See G.A.*, 826 N.W.2d at 130 (construing section 600A.8(3)(b)(1)–(2) and finding that only when a parent is "physically and financially unable to visit or when the child's custodian prevents visitation" does section 600A.8(3)(b)(2) apply). But assuming, arguendo, Cassie had prevented visitation, Michael did not attempt to maintain regular communication with K.J.S. In the three-and-one-half years before the termination hearing, Michael's only attempts at communication with K.J.S. occurred over a period of approximately six weeks and consisted of text messages in which Michael and Cassie could not agree upon a suitable visitation schedule, and two holiday cards. We find these meager attempts at contact insufficient to prevent a finding of abandonment. *See In re K.M.*, No. 14-1374, 2015 WL 1849508, at *6 (Iowa Ct. App. Apr. 22, 2015) ("A few sporadic text messages over the period of a few months . . . do not rise to any sort of meaningful contact that may fend off a claim of abandonment, particularly given the father did not attempt any other type of communication—or offer financial or emotional support—to [the child].").

reasonably concerned the father could not properly care for [the child] given his extremely violent past and significant criminal history").[3]

## B.    Best Interests

Michael next contends Cassie has failed to prove termination of his parental rights would be in K.J.S.'s best interests "because the evidence at trial showed that [Michael] has resolved to resume his place in K.J.S.'s life." Cassie responds Michael's "recent 'resolution' to resume visitation . . . does not overcome his years of absence from [K.J.S.'s] life or [Michael's] instability by reason of his continuing substance abuse and impending prison sentence."

K.J.S.'s best interests require Michael to "affirmatively assume the duties encompassed by the role of being a parent." *See* Iowa Code § 600A.1. We consider "the fulfillment of financial obligations, demonstration of continued interest in the child, demonstration of a genuine effort to maintain communication, and demonstration of the establishment and maintenance of a place of importance in the child's life." *See id.* Despite his newfound resolve to

---

[3] Michael attempts to distinguish *G.A.*, 826 N.W.2d at 129, contending: (1) K.J.S. is older than G.A. was, "and thus would be much more likely to be able to begin seeing [Michael] again without any issues"; (2) Cassie and Michael were subject to a custody order, and Cassie violated that order when she denied Michael's request for visitation; and (3) "K.J.S. recalls past visits with [Michael] and is aware of who [Michael] is." We find these distinctions inconsequential.

As in *G.A.*, Cassie was concerned with K.J.S.'s best interests. Michael had not exercised his court-ordered visitation in over three years when he tried to renew contact with K.J.S. Cassie had legitimate safety concerns—when Michael contacted Cassie about visitation, he was on probation for felony drug charges and had not successfully completed court-ordered substance-abuse treatment. K.J.S. told his therapist he was "scared" to spend time with Michael, and the therapist concluded: "Based on his age and the length of time of no contact, I recommend that [K.J.S.] have several meetings with his father for a short duration (e.g. two hours) in a neutral location. [K.J.S.] wants his mother to be present at these meetings." Accordingly, we find Cassie's offer of limited visitation with K.J.S. did not constitute prevention of visitation.

We note Michael did not file an application for an order for rule to show cause alleging interference with his visitation, and we are not asked to decide whether Cassie willfully disobeyed the custody order.

reenter K.J.S.'s life, Michael has failed to assume any parental duties. Michael has been absent for nearly half of his son's life, and K.J.S. considers Cassie's husband, who has been a stable presence since he was born, to be his father.

The juvenile court concluded it could not "preserve in law a relationship which no longer exists in fact" between K.J.S. and Michael. We agree and find termination of Michael's parental rights is in K.J.S.'s best interests.

### C.     Motion to Continue

We now turn to Michael's alternative argument that the juvenile court abused its discretion by denying his motion to continue on the day of the hearing. Michael contends his reason for being unable to attend—transportation difficulties—was truthful and beyond his control. Further, he asserts a continuance would not have been a "significant inconvenience to any party."

The denial of a motion to continue is within the broad discretion of the trial court, and we will only interfere on appeal when a clear abuse of discretion exists and an injustice has been done to the party seeking the continuance. *See In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). "Denial of a motion to continue must be unreasonable under the circumstances before we will reverse." *Id.* Here, Michael contacted his attorney the morning of the hearing and told her he could not attend because his ride from Des Moines to Denison fell through. The juvenile court had already granted Michael one continuance. And because the hearing was not until the afternoon, Michael had time to find alternate transportation or arrange to participate by phone, yet he failed to do so. Under these circumstances, the juvenile court's denial was not unreasonable.

**AFFIRMED.**