# IN THE COURT OF APPEALS OF IOWA

No. 18-2152
Filed February 20, 2019

**IN THE INTEREST OF A.C., G.W., and E.G.,**
**Minor Children,**

**L.W.-M., Mother,**
        Appellant,

**G.C., Father,**
        Appellant.

_____

Appeal from the Iowa District Court for Jefferson County, William Owens,

Associate Juvenile Judge.

A mother and father appeal the termination of their parental rights.

**AFFIRMED.**

Mary Baird Krafka of Krafka Law Office, Ottumwa, for appellant mother.

Shawn C. McCullough of Powell & McCullough, PLC, Coralville, for

appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant

Attorney General, for appellee State.

Katie E.M. Lujan of Lloyd, McConnell, Davis & Lujan, L.L.P., Washington,

guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**BOWER, Judge.**

A mother and father separately appeal a juvenile court order terminating their parental rights to their children A.C., G.W., and E.C.  The mother claims the court abused its discretion by denying the mother's motion to continue the termination hearing and her motion to suspend the proceedings.  The mother and father both claim the juvenile court should have granted them an additional six months to work toward reunification and termination is not in the children's best interests.  We find the court did not abuse its discretion, a six-month extension is not warranted, and termination is in the children's best interests.

I.      **Background Facts & Proceedings**

G.C. and L.W. are the parents to three children: A.C., born in 2013; G.W., born in 2015, and E.C., born in 2016.  E.C. also has a legal father, D.M.[1]

The family initially came to the attention of the Iowa Department of Human Services (DHS) in July 2017, following a report they allowed a registered sex offender to have unsupervised contact with the children.  An investigation revealed the report was no longer a concern, but the DHS worker discovered the home's condition was not safe for the children.  The home did not have running water or working plumbing, the kitchen sink was full of old and moldy food, a large pile of garbage was on the kitchen floor, and feces were ground into the floors and carpets.  Containers of chemicals and sharp tools were found mixed in with the children's toys on the front porch of the home.  The children were permitted to stay in the home conditioned on the parents completing a list of repairs to make the

---

[1] D.M.'s rights were terminated pursuant to Iowa Code section 232.116(1)(b) (2018).  He does not appeal.

home safe. The DHS worker also became concerned the parents were using illegal drugs, and the parents admitted to marijuana use but denied using while caring for the children. Neither parent participated in drug testing.

In September, DHS received a report the mother had been arrested for theft and possession of methamphetamine and the father was using methamphetamine. DHS discovered the father and the children had moved in with the father's mother. On September 28, the children were removed from the parents' care and placed with their paternal grandmother.

On December 6, the court adjudicated all three children in need of assistance (CINA) pursuant to Iowa Code section 232.2(6)(c)(2) (2017). DHS also discovered pending domestic-abuse charges against the mother, and the mother confirmed domestic violence between the parents while claiming the children had not witnessed any altercations. The parents were evicted from their home in December. On December 19, the children were moved to the home of a maternal aunt due to concerns over the grandmother's ability to care for the children.

Following a January 2018 dispositional hearing, the children were placed in three separate homes: A.C. with the grandmother, E.C. with the aunt, and G.W. with a third relative. E.C. was moved back to the grandmother's home with A.C. in April. The children remained in the two placements at the time of the termination hearing.

The parents were each arrested multiple times throughout the CINA proceedings and had a variety of criminal charges in multiple counties. In late January, the father overdosed and was in a coma for several days. Neither parent had stable housing or employment. The father has not consistently exhibited

positive parenting behaviors during visitations, and the mother needed redirection to pay attention to the children instead of her phone. The mother threatened to self-terminate more than once following the removal, and the father made an attempt to self-terminate a week before the termination hearing. The father threatened the family services worker multiple times.

On November 20, the mother requested a continuance of the termination hearing until January so she could be personally present instead of appearing by telephone from jail. The court denied the motion. On November 28, the court held a termination hearing. The mother attended the entire hearing via telephone. The social worker, family services worker, and the mother each testified. The father chose to not testify. The mother renewed her motion to continue the matter, and prior to her testimony requested the hearing be suspended until her release so she could testify in person; the court denied both motions. The mother testified she had been sober for the sixty-nine days of her incarceration. On December 4, the court terminated both parents' rights to G.W. and E.C. pursuant to Iowa Code 232.116(1)(f) (2018), and to A.C. pursuant to section 232.116(1)(h). Both parents appeal.

## II.    Standard of Review

We review termination-of-parental-rights cases de novo. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "There must be clear and convincing evidence of the grounds for termination of parental rights." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Where there is clear and convincing evidence, there is "no serious or substantial doubts as to the correctness or conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). The

paramount concern in termination proceedings is the best interest of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *In re H.S.*, 805 N.W.2d 737, 745 (Iowa 2011).

### III. Analysis

Neither parent contests the grounds for termination under section 232.116(1)(f) and (h). The children's ages, CINA adjudications, and period of removal have clearly been met. The mother was in jail at the time of the hearing and the children could not be returned to her care. The father had not participated in recommended treatment and exhibited threatening behavior toward service providers and the children could not be returned to his care. The State proved by clear and convincing evidence the children could not be returned to either parent at the time of the hearing.

The mother claims the court abused its discretion in denying her requests to continue the termination hearing or suspend the proceedings and the mother's testimony until after December 17 following the mother's sentencing hearing. "Denial of a motion to continue must be unreasonable under the circumstances before we will reverse." *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). The court may only grant a motion to continue for good cause. Iowa Ct. R. 8.5. "[T]he delay associated with a continuance of a hearing until the physical appearance of an incarcerated parent can be achieved could very well be contrary to the best interests of children and our nation's policy." *In re M.D.*, 921 N.W.2d 229, 234 (Iowa 2018).

While a parent has a right to participate in the entire termination hearing via telephone from the prison, due process does not require physical presence at the hearing. *See id.* at 234–35. Here, the mother participated in the entire hearing via telephone and was represented by counsel at the hearing. The mother requested the court continue permanency for the children based on the hope—not a guarantee—she would be given a suspended sentence on pending charges. It is not clear from the record that even had the continuance or suspension been granted the mother would be able to appear in person, as her ability to appear depended on the sentencing court's decision. The continuance would only have benefited the mother, not the children. *See In re T.D.H.*, 344 N.W.2d 268, 271 (Iowa Ct. App. 1983). We conclude the juvenile court did not abuse its discretion in denying the mother's motion to continue.

Both parents requested a six-month extension to work toward reunification. In order to grant a six-month extension, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes" providing a basis to determine the children will be able to return the parent at the end of the additional six months. Iowa Code § 232.104(2)(b). After the statutory limitation period has lapsed, termination proceedings take on a sense of urgency. *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). "Children simply cannot wait for responsible parenting. . . . [Parenting] must be constant, responsible, and reliable." *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). We look at parents' past performance for indications of the quality of care the parent is capable of providing in the future." *J.E.*, 723 N.W.2d at 798 (citation omitted).

The juvenile court found neither parent had made substantial progress toward remedying the problems giving rise to the removal, including failure to attend substance-abuse and mental-health treatment, to justify granting additional time under Iowa Code section 232.104. Over the fifteen months of offered services both parents were in and out of jail, accrued multiple new charges, and did not demonstrate an ability to be sober in the community. Although the mother has finally made progress toward sobriety, her sober period corresponded with her time in jail with full supervision. The father presented a hypothetical treatment option that would allow him to have one or more children live with him during treatment, but presented no evidence he had any intention of entering the program. Neither parent has participated in recommended treatment or participated in regular visits with the children. We do not find a basis to determine the children could return to either parent at the end of six months to justify an extension.

Finally, both parents claim termination of their rights is not in the best interests of the children. "In considering whether to terminate, 'the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.'" *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (quoting Iowa Code § 232.116(2)). The court also considers the bond between the parent and child. *See* Iowa Code § 232.116(3)(c). We will not deprive the children of permanency based on the hope someday the parents will learn to parent and provide a stable home for the children. *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014). Neither parent has a safe, stable home, and they have not demonstrated the ability to provide the permanency the children need. "It is simply

not in the best interests of the children to keep them in temporary foster homes while the natural parents get their lives together." *A.B.*, 815 N.W.2d at 778 (citation omitted). We agree with the juvenile court's finding "termination and adoption are the only permanency options available . . . that will provide the children with the sort of permanent, safe and nurturing home they need." We find termination is in the children's best interests.

**AFFIRMED.**