# IN THE COURT OF APPEALS OF IOWA

No. 19-0347
Filed June 19, 2019

**IN THE INTEREST OF R.B.,**
**Minor Child,**

**L.R., Mother,**
        Appellant.

_____

Appeal from the Iowa District Court for Scott County, Christine Dalton, District Associate Judge.

A mother appeals the termination of her parental rights to her child. **AFFIRMED.**

Barbara E. Maness, Davenport, for appellant mother.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Marsha J. Arnold, Davenport, attorney and guardian ad litem for minor child.

Considered by Potterfield, P.J., and Doyle and May, JJ.

**MAY, Judge.**

The juvenile court terminated the mother's parental rights to her child, R.B.[1] On appeal, the mother contends the juvenile court erred (1) in waiving the reasonable-efforts requirement, (2) in concluding the child could not be returned to her care in the near future, (3) in declining to provide the mother with an additional six months to work toward reunification, and (4) in finding termination was in R.B.'s best interest. We affirm the juvenile court.

## I. Background Facts and Proceedings

R.B. was born in 2018. Prior to R.B.'s birth, her mother had five other children. In November 2016, the mother came to the attention of the Iowa Department of Human Services (DHS) because of her drug use and neglect of her children. The juvenile court adjudicated each of the five as a child in need of assistance. All five were removed from the mother's care.[2] The mother was jailed for roughly one month for violating probation. Following her release, DHS attempted to engage the mother in services. The mother's response was poor: she did not show up for all of her drug testing; she did not complete recommended substance-abuse treatment; she did not attend parenting sessions; and she often missed visits with the children.

In May 2017, the mother tested positive for methamphetamine, cocaine, and THC. A new warrant was issued for her violation of probation requirements.

---

[1] The parental rights of the unknown father were also terminated and are not subject to this appeal.

[2] The oldest sibling was placed in a guardianship with a relative. The mother's parental rights to the second oldest and youngest sibling were terminated, and the children were adopted by their foster-care placement. The remaining two children were placed in their biological father's care.

The mother chose to remain out on warrant until she was finally arrested in March 2018. During that ten-month period, the mother did not contact DHS to check on the welfare of her children.

In mid-March 2018, the mother was sentenced to prison. The mother gave birth to R.B. a few weeks later. R.B. was removed from the mother's custody at the hospital just days after her birth. R.B. has not seen her mother since.

The juvenile court adjudicated R.B. as a child in need of assistance. DHS placed R.B. in the same foster home as two of her siblings.

DHS made repeated efforts to facilitate visitation between R.B. and the mother. Those efforts failed because the mother declined to return documentation that would allow the care coordinator to bring R.B. to the prison.

In July 2018, the juvenile court entered a dispositional order waiving the State's requirement to provide reasonable efforts toward reunification. In September 2018, the mother asked the court to reinstate the reasonable-efforts requirement. The court did not grant her request. On September 24, 2018, the court changed the permanency goal to termination of the mother's rights.

In February 2019, the court held a hearing regarding the mother's rights. The court heard testimony from the care coordinator, the assigned social worker, and the mother. The mother testified she had completed several classes aimed at self-improvement. She testified that she anticipated being paroled in the near future. She also testified that, upon release, she intended to enter a transitional living program that would help her lead a sober lifestyle. She asked the juvenile court to grant additional time for reunification.

On February 13, 2019, the juvenile court issued an order terminating the mother's rights pursuant to Iowa Code section 232.116(1)(d), (e), (g), and (h) (2018). Among other things, the court cited the mother's poor parenting history with her five other children; her failure to show progress in past child-in-need-of-assistance proceedings; her substantial criminal history; her severe, long-term substance-abuse issues; and the lack of evidence "to establish the quality and safety of her sober parenting." The court found postponing termination would not be in R.B.'s best interest.

The mother appealed. Our supreme court transferred the case to this court.

## II. Standard of Review

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We examine both the facts and law, and we adjudicate anew those issues properly preserved and presented." *In re C.S.*, No. 13-1796, 2014 WL 667883, at *1 (Iowa Ct. App. Feb. 19, 2014) (citing *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995)).

## III. Analysis

We use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we must determine whether a ground for termination under section 232.116(1) has been established. *Id.* at 472–73. If a ground for termination has been established, we must then consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473. Finally, we must consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)).

**A. Grounds for Termination**

Our first step is to determine if a ground of termination under section 232.116(1) has been established. *See id.* at 472–73. "The State has the burden of proving the grounds for termination by clear and convincing evidence." *In re H.L.B.R.*, 567 N.W.2d 675, 677 (Iowa Ct. App. 1997).

Here, the mother does not directly challenge the juvenile court's finding that grounds for termination exist. Instead, she argues the court erred in waiving the State's reasonable-efforts requirement. While the reasonable-efforts mandate is not "a strict substantive requirement of termination," the scope of reasonable efforts provided to a parent "impacts the burden of proving [the statutory] elements of termination, which require reasonable efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) ("The State must show reasonable efforts as part of its ultimate proof the child cannot be safely returned to the care of a parent.").

Although the State usually must demonstrate it provided services that constitute reasonable efforts toward reunification, the reasonable-efforts mandate can be waived when the court finds that aggravating circumstances exist. *See* Iowa Code § 232.102(14). Here, the juvenile court waived reasonable efforts through its July 2018 dispositional order. The mother did not appeal from that order. *Cf. In re M.A.F.*, 679 N.W.2d 683, 684 (Iowa Ct. App. 2004) ("The dispositional order was a final, appealable order."). As a result, we will not consider her current challenge to the waiver of reasonable efforts. *See In re M.Y.R.*, No. 11-1139, 2011 WL 5389436, at *7 (Iowa Ct. App. Nov. 9, 2011) (refusing to consider challenge to waiver of reasonable efforts when the dispositional order waived reasonable efforts and no appeal was taken from the dispositional order).

Because the waiver of reasonable efforts is not properly before this court and the mother does not otherwise challenge the statutory grounds supporting termination, "[a]ny claim of error related to the statutory grounds has been waived." *In re S.F.*, No. 15-0490, 2015 WL 3626439, at *1 (Iowa Ct. App. June 10, 2015). We conclude the first step of our analysis is satisfied.

## B. Best-Interest Framework

Our next step is to consider the best-interest framework set forth in section 232.116(2). *A.S.*, 906 N.W.2d at 473. Section 232.116(2) provides in relevant part:

> In considering whether to terminate the rights of a parent under this section, the court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

Iowa Code § 232.116(2); *see also id.* § 232.116(2)(a), (b), (c) (identifying factors that may be relevant to the court's best-interest analysis).

Here, the mother argues termination is not in R.B.'s best interest because R.B. will not be "provided an opportunity to develop a bond with her biological parent." However, R.B. has no relationship with the mother. R.B. left her mother's care shortly after birth and has had no contact with her. Conversely, she is bonded to her foster parents and fully integrated into their family. The foster parents have expressed interest in adopting R.B. *See id.* § 232.116(2)(b). Their adoption of R.B. would allow her to grow up with two of her half-siblings whom the foster parents previously adopted. *See In re A.M.S.*, 419 N.W.2d 723, 734 (Iowa 1988) (noting siblings should be raised together when possible). We conclude the second step of our analysis is satisfied.

## C.  Exceptions

Next, we consider section 232.116(3), which provides as follows:

> The court need not terminate the relationship between the parent and child if the court finds any of the following:
> a. A relative has legal custody of the child.
> b. The child is over ten years of age and objects to the termination.
> c. There is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.
> d. It is necessary to place the child in a hospital, facility, or institution for care and treatment and the continuation of the parent-child relationship is not preventing a permanent family placement for the child.
> e. The absence of a parent is due to the parent's admission or commitment to any institution, hospital, or health facility or due to active service in the state or federal armed forces.

"[T]he parent resisting termination bears the burden to establish an exception to termination" under section 232.116(3).  *A.S.*, 906 N.W.2d at 476. Here, the mother does not assert any exception to termination applies, and we identify none.  We conclude this step is satisfied.

## D. Additional Time

Finally, we consider the mother's contention the juvenile court erred in declining to provide an additional six months to work toward reunification.  The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

Here, the mother argues the need for removal will be obviated when she is paroled and enters the transitional facility she contacted.  While we do not question

the mother's sincerity in her efforts to improve her life moving forward, we cannot say her plan provided the juvenile court with specific factors it could rely on to grant the additional six months. Although the mother claimed she would be paroled soon, no firm parole date could be verified. Nor was it clear when she could actually be placed at a transitional facility. Moreover, the mother's "past performance is indicative of the quality of care [s]he is capable of providing in the future." *In re N.A.S.*, No. 13-0074, 2013 WL 988895, at *2 (Iowa Ct. App. Mar. 13, 2013); *accord In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). As already explained at length, this mother's history reveals severe and persistent parenting deficiencies. The juvenile court reasonably concluded it could not rely on the mother to turn over a new leaf within the next six months.

**IV. Conclusion**

For the reasons stated, we conclude the juvenile court properly terminated the mother's parental rights.

**AFFIRMED.**