# IN THE COURT OF APPEALS OF IOWA

No. 21-0286
Filed May 12, 2021

**IN THE INTEREST OF X.L. and R.L.,**
**Minor Children,**

**A.L., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Clinton County, Phillip J. Tabor, District Associate Judge.

A mother appeals the termination of her parental rights.  **AFFIRMED.**

Taryn R. McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P., Dubuque, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith Lamberti and Dion Trowers, Assistant Attorneys General, for appellee State.

Jennifer Olsen of Olsen Law Firm, Davenport, guardian ad litem for minor children.

Victoria Noel of The Noel Law Firm, Clinton, attorney for minor children.

Considered by Doyle, P.J., May, J., and Blane, S.J.*  Tabor, J., takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**MAY, Judge.**

A mother appeals the termination of her parental rights to her children, X.L, born in 2008, and R.L., born in 2011.[1] She claims (1) the State failed to establish statutory grounds authorizing termination, (2) termination is not in the children's best interests, (3) the juvenile court should have exercised an exception to termination under Iowa Code section 232.116(3)(c) (2020), and (4) the court should have granted her additional time to work toward reunification. We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We must determine: (1) whether grounds for termination have been established, (2) whether termination is in the children's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020). Finally, we address any additional claims brought by the mother. *See In re T.P.*, No. 19-0162, 2019 WL 3317346, at *2 (Iowa Ct. App. July 24, 2019).

---

[1] The juvenile court also terminated the father's parental rights, but he does not appeal.

Here, the juvenile court found grounds authorizing termination pursuant to section 232.116(1)(f) and (i). The mother challenges the court's findings under paragraph (i). But she raises no challenge to termination under paragraph (f). So we believe any such challenge is waived. *See In re J.M.*, No. 20-1324, 2021 WL 1017130, at *1 (Iowa Ct. App. Mar. 17, 2021) (collecting cases).

We move on to the second step in our analysis, which requires us to determine whether termination is in the children's best interests. We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

When determining whether termination is in X.L.'s and R.L.'s best interests, we look to the mother's past performance as an indicator of the care she is likely to provide in the future. *See In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997). And here the mother's past performance raises substantial concerns about the future.

She has struggled with methamphetamine use. The Iowa Department of Human Services (DHS) has been involved with the mother since July 2017. Throughout that time, substance abuse has remained a concern.[2] Over two years

---

[2] We commend the mother for successfully completing outpatient treatment in May 2019. But we reiterate once again, "Methamphetamine is a scourge." *J.P.*, 2020 WL 110425, at *2; *see also In re K.L.*, No. 17-0346, 2017 WL 2465817, at *1 (Iowa

later, in December 2019, X.L. and R.L. were removed from the mother's custody based on continuing concerns that the mother was abusing methamphetamine while caring for them. Since removal, the mother has tested positive for methamphetamine and amphetamines in January, July, and November 2020. And the mother failed to engage in substance-abuse treatment after her positive tests. The mother has also recently missed drug tests.[3]

Additionally, we share DHS's concerns about the mother's mental health and her ability to care for the children. The mother has failed to consistently attend mental-health treatment. Prior to removal, she struggled with getting the children to school. And she recently became homeless. The mother acknowledged the children could not be returned to her at the time of the termination hearing.

We note also that, following removal, the children were placed in family foster care. They have remained with the same family for the duration of this case. They have thrived in this arrangement. As the juvenile court observed, the children's development in their foster home has been "simply put, remarkable." And their foster parents plan to adopt them. *See* Iowa Code § 232.116(2)(b) (permitting the court to consider "whether the foster family is able and willing to

---

Ct. App. June 7, 2017). And we cannot turn a blind eye to her history of subsequent relapse.

[3] We presume these missed tests would have been positive for illegal substances. *See In re I.J.*, No. 20-0036, 2020 WL 1550702, at *2 (Iowa Ct. App. Apr. 1, 2020) ("We presume these missed drug tests would have resulted in positive tests."); *In re D.G.*, No. 20-0587, 2020 WL 4499773, at *4 (Iowa Ct. App. Aug. 5, 2020); *In re L.B.*, No. 17-1439, 2017 WL 6027747, at *2 (Iowa Ct. App. Nov. 22, 2017); *In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) ("She has missed several drug screens, which are thus presumed 'dirty,' i.e., they would have been positive for illegal substances.").

permanently integrate the child into the foster family" when making a best-interest determination).

All things considered, then, we believe termination is the way forward. We do not question the mother's affection for the children. Even so, we cannot ignore her history of unaddressed substance abuse, mental-health issues, and struggles to care for the children. Given her history, we cannot be confident she will be able to adequately meet the children's needs in the future. *See In re C.W.*, 554 N.W.2d 279, 283 (Iowa Ct. App. 1996). Conversely, termination offers the children a path toward permanency in a stable, supportive home. Termination is in the children's best interests. The second step in our analysis is complete.

We move to our third step, whether we should apply a section 232.116(3) exception to preclude termination. The mother argues termination is not necessary under section 232.116(3)(c), which authorizes the juvenile court to forgo termination if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."

We decline to apply section 232.116(3)(c) here. The juvenile court found: "It is clear that any bond between the children and their parents and any emotional detriment to a termination is well overcome by the developmental strides they have made in the foster home." *See, e.g., In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). Based on our de novo review, we agree. We do not believe termination is detrimental. Rather, as explained, termination is in the children's best interests. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010) ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the

disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs."). So we decline to apply section 232.116(3)(c).

Finally, we address the mother's argument that she should be given an additional six months to work toward reunification. The juvenile court *may* defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

We see no reason for the juvenile court to have postponed termination. The mother demonstrates some understanding of the steps she would need to take in those six months. But she has been involved with DHS for over three years. And yet the same concerns that initiated DHS involvement largely remain unresolved. Moreover, X.L. and R.L. are bonded to their foster family and desire permanency. *See id.* § 232.116(2)(b)(1). These children should not be forced to wait any longer. No additional delay is warranted.

We affirm the juvenile court.

**AFFIRMED.**