# IN THE COURT OF APPEALS OF IOWA

No. 24-1924
Filed April 9, 2025

**IN THE INTEREST OF C.C.,**
**Minor Child,**

**B.C., Father,**
Appellant,

**C.L., Mother,**
Appellant.

_____

Appeal from the Iowa District Court for Linn County, Cynthia Finley, Judge.

A father and a mother separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

David R. Fiester, Cedar Rapids, for appellant father.

Allison C. Ackerman of Nidey Erdahl Meier & Araguas, PLC, Cedar Rapids, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Michael Lindeman, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered without oral argument by Greer, P.J., and Langholz and Sandy, JJ.

**GREER, Presiding Judge.**

A mother and father separately appeal the termination of their parental rights to their child, C.C., who was born in late 2018.[1]  Both parents argue the State failed to establish a statutory basis for termination.  The father continues, arguing the Iowa Department of Health and Human Services (the Department) did not make reasonable efforts and termination is not in the best interests of the child.  He asks this court to apply an exception for termination, citing the close relationship he has with the child.  After our de novo review, we affirm the termination of parental rights of both the mother and the father.

**I.  Background Facts and Proceedings.**

At birth, C.C. tested positive for cocaine exposure.  She was first adjudicated a child in need of assistance (CINA) less than a month after her birth, on January 18, 2019.  Later that same year, she tested positive for cocaine via hair sample.  This first CINA was closed in July 2021, but during those proceedings C.C. was out of her parents' custody for approximately ten months until mid-2020.

After some months, the parents' behavior came to the Department's attention again.  On September 6, 2022, the father was arrested for possession of heroin.  One week later, on September 13, C.C. was removed from her parents' care.  Upon investigation, both the mother and the father were alleged to be using heroin or other illicit substances while their children were in their care and custody.  After an arrest for driving violations, the mother admitted that she was no longer

---

[1] There are two older siblings (born in 2010 and 2007) that were adjudicated children in need of assistance before C.C.'s birth, but they are not involved in this appeal.  There are also other older children who have been involved with the Iowa Department of Health and Human Services, dating back to 2005.

sober and that she was ingesting fentanyl and unprescribed Xanax. C.C.'s siblings reported the mother was engaging in prostitution in the home and the parents doing drugs in front of them. On September 21, C.C. was, once again, adjudicated a CINA. Two days after the CINA proceedings, C.C.'s test results for illicit substances returned; she tested positive for opiates and cocaine.

With the institution of services, both the mother and father showed progress in 2023. Emblematic of progress, the mother and father gained stable housing at a transitional housing program, moving from the homeless shelter where they previously resided. As a result of stable housing and progress towards sobriety, reunification remained the goal in October 2023, and the juvenile court extended the permanency review for an additional six months. And a trial home placement was granted starting on November 6. From late October to January 2024, both parents contend there was a lapse in coordination from the Department as their assigned social worker took leave. The father and mother assert they asked the Department if they should take a drug test but were told it was not necessary. In early 2024, progress halted when a new social worker assigned to the family required the mother, father, and child to report for a drug test. The mother tested positive for cocaine, as did C.C. The father's hair was too short to test. With this development, the trial home placement ended February 1 and fully supervised visits were reimposed.

The situation did not improve. On May 8, the mother again tested positive for cocaine. On May 21, the mother tested positive for fentanyl. Thus, on May 23, the Department filed a petition for termination of parental rights.

In the wake of the termination proceedings, both parents tested negative for illicit substances but have tested positive for alcohol—the mother on August 29 and the father on May 29, August 30, and October 10. At a few of the supervised visits during this period, the parents fell asleep. The Department's documents report that the father had slow or sluggish speech and at one point smelled of alcohol, although a subsequent urinalysis came back negative.

At the November termination trial, the Department social worker supervisor, a family support specialist, and both parents testified. The supervisor recommended the juvenile court terminate parental rights. Both the father and the mother argued that sufficient progress had been made for the juvenile court to find C.C. could return to the parents' custody. Both parents discussed the status of their sobriety and their use of alcohol. But the family support specialist questioned the parents' honesty related to their usage. Starting with C.C.'s birth almost six years prior, the child had been involved in CINA proceedings for almost four and a half years of her life and removed from their custody for almost three years by the time of the termination hearing. After the trial, the juvenile court terminated parental rights for both parents under Iowa Code section 232.116(1)(f) (2024).

Both the mother and father appeal.

## II. Standard of Review.

We review termination of parental rights de novo. *See In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). "We give weight to the juvenile court's factual findings, especially when considering the credibility of witnesses, but we are not bound by them." *Id.* (citation omitted). "The paramount concern in termination

proceedings is the best interests of the child." *In re D.S.,* 806 N.W.2d 458, 465 (Iowa Ct. App. 2011).

**III. Discussion.**

"Termination of parental rights under chapter 232 follows a three-step analysis." *In re D.W.,* 791 N.W.2d 703, 706 (Iowa 2010). First, the court must determine if there is a statutory basis for termination, under section 232.116(1). *Id.* "The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent," directly related to the fourth element of section 232.116(1)(f). *In re C.B.,* 611 N.W.2d 489, 493 (Iowa 2000). Second, if a statutory basis exists, the court must then decide whether termination of parental rights is in the best interests of the child. *D.W.,* 791 N.W.2d at 706–07. Finally, "the court must consider if any statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights." *Id.* at 707.

The juvenile court terminated both the father and mother's rights under section 232.116(1)(f), which allows termination when all the following occurred:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Both the mother and father contest only the fourth element of section 232.116(1)(f), which incorporates section 232.102. The pertinent portion of section 232.102 states:

> Whenever possible the court should permit the child to remain at home with the child's parent, guardian, or custodian. Custody of the child should not be transferred unless the court finds there is clear and convincing evidence of any of the following:
> (1) The child cannot be protected from physical abuse without transfer of custody.
> (2) The child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance and an adequate placement is available.

Iowa Code § 232.102(4)(a). The father raises other claims in his appeal, arguing termination is not in the best interests of the child and the Department did not make reasonable efforts.

Although we address the father's and mother's claims separately, we note that at the time of termination, the father and mother lived together in Iowa City. "We recognize each parent has their own rights to and relationship" with C.C. *See In re G.B.*, No. 22-0439, 2022 WL 1657190, at *4 (Iowa Ct. App. May 25, 2022). "[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally." *In re D.G.*, 704 N.W. 2d 454, 459 (Iowa 2005). But "[w]e cannot ignore reality and the extent these parents' lives are intermixed when deciding their respective legal challenges." *G.B.*, 2022 WL 1657190, at *4. We will not return the child to a dangerous or harmful home environment. *See* Iowa Code § 232.102(4)(a).

**A. Mother's Appeal.**

The mother's sole claim on appeal is that the juvenile court got it wrong when the court determined C.C. could not return to her mother on the day of the

termination hearing.[2] On our review, we agree with the juvenile court and find clear and convincing evidence that C.C. could not be returned to the mother's custody at the time of the termination hearing, satisfying the fourth element of the statutory framework for termination under section 232.116(1)(f).

We do not have to look far to support this conclusion. The mother testified at the termination hearing and although she argued she made sufficient steps in her sobriety for over six months, specifically in avoiding illicit drugs, she admitted during her testimony that there was "progress" but not such progress that C.C. could be immediately returned to her. Instead, she advocated for "six more months to try to get [C.C.] back in [her] life." Based upon the history and the mother's own concession, we find there was clear and convincing evidence that C.C. could not be returned to the mother's custody at the time of the termination hearing. *See In re A.M.*, 843 N.W.2d 100, 111 (Iowa 2014) (explaining that the issue is whether child could be returned "at the time of the hearing").

And in any event, the record tells a different story; the mother has struggled for years to maintain sobriety. Although she has participated in a bevy of inpatient and outpatient treatment, the mother's drug testing results show she still struggles with drug use. In 2024, she tested positive for cocaine on January 26 and May 8,

---

[2] In the "nature of the case and relief sought" section of her brief, the mother mentions in passing that the juvenile court should have granted her an additional six months to achieve reunification, but there is no developed argument beyond that reference. We do not consider this *See* Iowa Rs. App. P. 6.201(1)(d) (requiring petitions on appeal to "substantially comply with rule 6.1401--Form 5"); 6.1401—Form 5 ("[S]tate what findings of fact or conclusions of law the district court made with which you disagree and why, generally referencing a particular part of the record, witnesses' testimony, or exhibits that support your position on appeal: . . . Include supporting legal authority for each issue raised, including authority contrary to appellant's case, if known.").

and for fentanyl on May 21. And once she made progress by testing negative for illegal drugs, she tested positive for alcohol. Setbacks in the year prior to termination, including the use of alcohol and cocaine, show the mother is willing to compromise her sobriety when supervision lapses. *See In re K.V.*, No. 19-1775, 2020 WL 110439, at *1 (Iowa Ct. App. Jan. 9, 2020) ("Even assuming the mother has managed six months of sobriety, a short period of sobriety is not a reliable indicator of her ability to remain sober when considered in light of her history, which includes ten years of substance use and several prior failed attempts at sobriety.").

We commend the mother for reaching six months of sobriety. But, ultimately, we must conclude that six months of sobriety is inadequate to show that the mother will maintain sobriety in the long term. Here, along with the mother's concession related to all the elements of section 232.116(1)(f), we agree that the State proved this ground for termination. *See In re A.H-G.*, No. 24-1616, 2025 WL 402015, at *3 (Iowa Ct. App. Feb. 5, 2025) (holding that the mother's concession over all the statutory grounds for termination, along with the inability to progress past supervised visits because of unsafe parenting, met the clear and convincing evidence standard).

Because the mother does not challenge any other grounds in the three-step process, *see In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010), we affirm the termination of the mother's parental rights without further analysis.

**B. Father's Appeal**

The father appeals the juvenile court's assessment that section 232.116(1)(f) provides a statutory basis for the termination of his parental rights and that reasonable efforts were made by the Department, it is in the best

interests of the child to terminate parental rights, and no exception applies to preclude termination of his rights. We evaluate each argument in turn.

**i. Statutory Basis.**

The father argues the State failed to show that C.C. could not be returned to his custody at the time of the termination trial. After review, we find the father has unaddressed alcohol issues and has failed to consistently attend drug testing. These issues, in conjunction with an unsafe living environment, lead us to agree with the juvenile court that C.C. could not be returned to the father at the time of termination, fulfilling the father's only contested element of section 232.116(1)(f).

Throughout the proceedings, the Department raised concerns about the father's struggle with alcohol consumption. As summarized by the social worker supervisor at the termination hearing, the father's criminal history also was concerning: "He's got child endangerment, possession charges, charges for prescription drugs, robbery, unwillful injury. Interfering with official acts, intoxication. Assault." In 2023, the father appeared at a scheduled court matter intoxicated and was charged with contempt. The alcohol consumption continued to raise concerns, as the father tested positive for alcohol three times in the months leading up to the termination hearing, on May 29, August 30, and October 10. He claimed these positive tests were from "three to four drinks" the night before. At the termination hearing, the father denied any alcohol issue, stating he had a limited number of drinks with coworkers on any occasion he tested positive for alcohol. But the social worker supervisor testified to concerns over an individual's use of alcohol when they suffer from substance abuse.

In tandem with the Department's concerns, the father's behaviors at visits with C.C. were suspect for substance use. In a May 22, 2024 affidavit submitted to the juvenile court, the social worker case manager stated:

> a. During the reporting period of December 2022, It was reported that [the father] seemed sluggish during visits.
> > i. [The father] seemed sluggish at his visit on 11/25/22.
> > ii. [The father] seemed sluggish on his visit on 12/2/22.
> > iii  [The father] was talking slow at a visit on 12/4/22.
> b. On January 5th, 2023, [the father] was observed to be fairly sluggish in his speech and mannerisms during a visit with [C.C.].
> > . . . .
> g. On a visit on 3/9/24, [the father] struggled to stay awake

The father fell asleep during at least two additional visits—on June 8 and July 27, 2024. A visit on the Friday immediately preceding the termination hearing, a department employee and a substance abuse counselor reported the father smelled of alcohol. The father was asked to take an urinalysis test, which came back negative. And the family support specialist, employed by Families First, did acknowledge that the father might have been tired from working.

Historically, the father has struggled with illicit substances, although the father has shown progress. At the start of the underlying CINA, in 2022, the department alleged he was using illicit substances. The father was prescribed methadone and started taking the medication. At some point since 2022, the father discontinued use without consulting a physician. To his credit, he has not tested positive for illicit substances since 2022, but the juvenile court confirmed in its review orders that the father needed to continue drug testing, including alcohol testing, and follow through substance-use treatment. Yet the father testified that he did not have a problem with his alcohol use and stated, "I understand that the

Court or [Department] might feel that alcohol . . . may lead to other drugs, but I don't feel it, I don't know."

The juvenile court noted the father's lack of a positive drug test but pointed to his discontinuing the methadone program without medical supervision, his choice to keep his hair too short so that testing to determine chronic usage was not possible, and his choice to ignore his role in achieving sobriety as not boding well for long-term sobriety. We qualify the father's success in not testing positive for illicit drugs with the fact that the father has failed to consistently attend drug-testing obligations; in the months before the termination hearing, the Department offered twenty-nine tests and the father missed eight drug testing calls. And the social worker case manager noted in her affidavit that over the course of these proceedings, the father only tested 52% of the time for the Department.

Finally, we note that the father currently resides in an unsafe environment for a child; the father lives with the mother, who has a long history of illicit drug use. Although we adjudicate the mother's and father's rights separately, the decisions each makes in the shared living environment inextricably impact the other. *See G.B.*, 2022 WL 1657190, at *4. Illicit drug abuse by a parent, in the home or in front of the child, may be sufficient to find a child in need of assistance or terminate parental rights. *See, e.g., A.B.*, 815 N.W.2d at 777 ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children."); *In re J.S.*, 846 N.W.2d 36, 37 (Iowa 2014) (concluding "[a] parent's methamphetamine addiction by itself can result in 'harmful effects' to the child, thereby justifying state intervention to protect the child" but addiction, by itself, is

not sufficient to establish risk of physical injury). Section 232.102(4)(a) mandates that we do not return a child to an environment where "[t]he child cannot be protected from some harm which would justify the adjudication of the child as a child in need of assistance . . . ."

Because the father has unaddressed alcohol issues, inconsistently appears for drug testing, and resides in an unsafe environment, the State met its burden to prove each element of section 232.116(1)(f), including showing the child could not be returned to the father's custody at the time of termination, in accordance with section 232.102(4)(a)(2).

## ii. Reasonable Efforts.

The father claims the Department did not make "every reasonable effort" to reunite him and the child because the Department did not offer a reunification plan for the father as an individual, instead of punishing him for the mother's relapses. But the Department offered services tailored to the concerns of the father's ability to parent and, thus, made reasonable efforts to reunite C.C. with her father. If the father wanted a different plan, it was his responsibility to make that request to the juvenile court. *See In re C.H.*, 652 N.W.2d 144, 148 (Iowa 2022) ("[I]f a parent fails to request other services at the proper time, the parent waives the issue and may not later challenge it at the termination proceeding. . . . [T]he parent must make such challenge at the removal, when the case permanency plan is entered, *or at later review hearings.*" (internal citations omitted) (emphasis added)). And nothing prohibited him from not allowing the mother to remain in his home once he was aware of the safety issues surrounding her presence.

Iowa law requires the Department to "make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child." *C.B.*, 611 N.W.2d at 493 (quoting now Iowa Code § 232.102(6)). In determining if the Department has made every reasonable effort, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102A(1)(a)(1). The concept of reasonable efforts includes "visitation designed to facilitate reunification while providing adequate protection for the child" when the child is out of the home. *C.B.*, 611 N.W.2d at 493.

Following the August 2024 permanency hearing the juvenile court summarized the reasonable efforts as follows:

> The Court finds that [the Department] has made reasonable efforts to reunify the family during this review period, as documented by the written reports and the case permanency plan. Those efforts include: Family-Centered Services, substance abuse evaluation, substance abuse treatment, methadone treatment, drug testing, residential drug treatment, mental health evaluation, medication management, individual therapy, protective daycare, assistance with transportation, and The Way Home housing assistance. Further, no party has requested additional services or assistance.

No other requests for additional or different services were requested. These services addressed elements of the case plan, in large part, assisting the mother and father in remaining sober. The services were designed to "make it possible for the child to safely return to the family's home." Iowa Code § 232.102(4)(b). We reject the father's argument that the Department did not make reasonable efforts toward reunification.

### iii. The Parent-Child Bond.

In both his best-interest challenge and his request for a permissive exception to termination, the father points to the bond he has with the child as the reason the juvenile court should not have terminated his parental rights. So we look to whether that bond is such that the father's parental rights should not be terminated under the statutory parameters involved with each challenge. First, in addition to meeting the statutory requirements for termination set forth in section 232.116(1), the termination must be in the best interest of the child. *See D.W.*, 791 N.W.2d at 706–07. "Thus, termination is not mandatory upon finding the requisite elements in section [232.116(1)]." *In re C.W.*, 554 N.W.2d 279, 282 (Iowa Ct. App. 1996). "In making the best-interests determination, we give primary consideration to the child[]'s safety, the best placement for furthering their long-term nurturing and growth, as well as their physical, mental, and emotional condition and needs." *In re A.H.*, 950 N.W.2d 27, 41 (Iowa Ct. App. 2020); *see* Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing." *C.B.,* 611 N.W.2d at 495 (cleaned up). "[A] child's safety and his or her need for a permanent home [are] the defining elements in a child's best interests." *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially).

The father argues that termination is not in C.C.'s best interests because the "bond between the child and [her] father." Recently, this court clarified a parent-child bond may be considered in the best-interest analysis. *See In re L.A.,*

No. 24-2086, 2025 WL 855764, at *3–4 (Iowa Ct. App. Mar. 19, 2025). But, the best-interests test requires we look at more than a child's bond with a parent. A child deserves safety and stability. Consistent with "defining elements" of the best-interests analysis, we look to the safety and stability of the child when determining if a placement is in the child's best interests. *See J.E.*, 723 N.W.2d at 802 (Cady, J., concurring specially). "We do not gamble with the child[]'s future by asking them to continuously wait for a stable biological parent, particularly at such tender ages." *D.W.*, 791 N.W.2d at 707 (cleaned up). The father's home has proved to be an unsafe place for C.C., a child too young to self-protect from illicit substances. Excluding the positive drug test at the child's birth, there have been two other times this child tested positive for illicit drugs while in the parents' care. C.C. has been removed from the custody of the mother and father for about four and a half years of her nearly six years of life. As safety concerns appeared over the course of these proceedings, the father still had only minimal contact with the child and did not comply with the testing that was mandated by the Department or maintain sobriety. According to the social worker supervisor, C.C. is doing well in her current foster placement. The father has not established that his bond with the child outweighs these safety concerns.

Focusing only on the bond between them, it is the father's burden to establish a permissive exception to prevent termination of his parental rights. *See In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). And he has failed to show termination would be harmful to the child because of the closeness of their relationship. *See* Iowa Code § 232.116(3)(c); *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). "[T]he existence of a bond is not enough. The law requires clear and

convincing evidence that 'termination would be detrimental to the child at the time due to the closeness of the parent-child relationship.'" *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021) (quoting Iowa Code § 232.116(3)(c)).

Again, we do not doubt the father loves his daughter, but an exception to termination requires the parent-child bond outweigh the inability for the parent to meet the child's needs. See *D.W.*, 791 N.W.2d at 709 ("[O]ur consideration must center on whether the child will be disadvantaged by termination, and whether the disadvantage overcomes [the parent]'s inability to provide for [the child]'s developing needs."). The child has reached stability in her current placement; the GAL stated, "[C.C.] likes to live with her foster parents and told me she wants to stay there." Severing any relationship has the potential for trauma, but we do not find the closeness of this parent-child bond outweighs C.C.'s need for permanency and a safe home environment.

The State proved a statutory basis for termination and that termination is in the child's best interests. Reasonable efforts were made by the Department. The father failed to show any permissive exception to termination applies. We affirm the termination of the father's parental rights.

## IV. Conclusion.

We affirm the termination of both the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**